**Marc TUROF, Plaintiff,**

**v.**

**Robert J. KIBBEE, Chancellor of the Board of Higher Education of the City of New York, Brooklyn College of the City University of New York and Robert L. Hess, President of Brooklyn College, Defendants.**

**No. CV 81–768.**

United States District Court,
E. D. New York.

Dec. 2, 1981.

Douglas J. Kramer, Baden Kramer & Huffman, New York City, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N. Y., by Stephen M. Jacoby, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This is an action for injunctive relief and damages brought under 42 U.S.C. § 1983 and arising out of the suspension of plaintiff, Marc Turof, from Brooklyn College.

Mr. Turof alleges violations of his right to due process resulting from claimed irregularities in the scheduling of pre-hearing informal conferences and in alleged improprieties in conducting the disciplinary hearing that was held prior to his actual suspension.

Mr. Turof sought a preliminary injunction to prevent the defendants from imposing any sanctions upon him without conforming to the procedural requirements set forth in the By-laws of the Trustees of Brooklyn College (By-laws). The defendants crossmoved to dismiss the complaint for failure to state a claim upon which relief could be granted and lack of personal jurisdiction or alternatively, for summary judgment.

A hearing was held before this Court on April 3, 1981 at which Mr. Turof and Gregory Nolan, coordinator of the Lay Advocate Program at Brooklyn College, testified. The defendants did not at that time present any witnesses. By order dated April 24, 1981, plaintiff's motion for a preliminary injunction was denied. We reserved decision on defendants' cross motion for summary judgment so that the plaintiff might have the opportunity to present additional evidence, including a transcript of the disciplinary proceeding. That transcript was presented to this Court in October. Having now had the opportunity to review plaintiff's evidence in its entirety and for the reasons set forth below, defendants' motion for summary judgment is granted.[1]

I

There is no dispute as to most of the facts in this case. The only factual dispute, which is not a material one, will be discussed later.

At the outset, security guards at Brooklyn College charged that Mr. Turof had violated several regulations. As authorized by Section 15.3 of the By-laws,[2] vice presi-

---

1. In addition to the alleged due process violations, Mr. Turof claims a violation of the Equal Protection Clause of the Fourteenth Amendment. His naked allegation of an equal protection violation is unsupported by any factual showing whatsoever. The specific claims set forth in his complaint, as well as the overall presentation of evidence and the legal arguments made by his attorneys on his behalf address only the issue of a procedural due process violation.

2. Section 15.3 of the By-laws governs Student Disciplinary Procedures. It provides:

   Section 15.3 STUDENT DISCIPLINARY PROCEDURES. a. Any charge, accusation, or allegation which is to be presented against a student, and, which if proved, may subject a student to disciplinary action, must be submitted in writing in complete detail to the office of the dean of students promptly by the individual, organization or department making the charge.

dent for Campus Affairs, Dr. Hilary Gold, scheduled pre-hearing informal conferences for Mr. Turof to discuss the charges. Despite the fact that Mr. Turof had notified the College of his new address, the notices of the pre-hearing conferences were sent to him at an old address. Because of the College's error, Mr. Turof did not learn of the scheduled conferences until after the appointed dates had passed. Thereafter he

b. Notice of the charge shall be personally delivered or sent by the dean of students to the student at the address appearing on the record, of the college, by registered or certified mail and shall contain the following:

1. A complete and itemized statement of the charges being brought against the student including the rule, bylaw or regulation he is charged with violating, and the possible penalties for such violation.

2. The time, the date (which shall be as soon as practicable) and the place of meeting with a counselor from the office of the dean of students or a qualified faculty member designated by the dean of students.

3. The student shall be advised of his/her rights in the proceeding and possible consequences. Specifically the notice shall include:

A. A warning that anything he/she may say at this meeting may be used against him/her at a non-college hearing; therefore, he/she may have legal counsel present to advise him/her.

B. A statement of his/her right to remain silent without assumption of guilt.

C. A statement that the counselor is precluded from testifying in a college hearing regarding information received during the interview.

c. At the meeting with the counselor in the office of the dean of students or qualified faculty member designated by the dean of students, the following procedure shall be in effect:

1. An effort will be made to resolve the charges by mutual agreement and where warranted to agree on the disciplinary action to be taken.

2. The counselor, if an agreement is reached, shall report his/her recommendation to the dean of students for affirmation and the complainant shall be so notified.

3. If no agreement is reached, or if the complainant or the student so requests, or if the student fails to appear, a hearing will be scheduled before the faculty-student discipline committee.

d. The student shall be informed in writing by registered or certified mail or by personal service of the hearing with sufficient particularity of the charges and of the time and place of hearing. Notice of at least five school days shall be given to the student in advance of the hearing unless the student consents to an earlier hearing. The notice shall advise the student of his/her right to have legal counsel and witnesses participate at the hearing.

e. At the hearing, before the faculty-student discipline committee, the following procedure shall apply:

1. The specific charges shall be read to the student. If the student admits the charges are true, he shall be given an opportunity to explain his/her actions before the committee shall decide on the penalty. If the student denies the charge or is silent, the hearing must continue, the accusing party proceeding first. Both sides may introduce evidence and cross-examine witnesses.

2. The college shall make a record of each disciplinary hearing by some means such as a stenographic transcript, a tape recording or the equivalent. A disciplined student is entitled upon request to a copy of such a transcript without cost.

3. The student shall have the option to a closed hearing and the right to request an open public hearing. However, a majority of the committee shall have the right to hold a closed hearing when an open public hearing would adversely affect and be disruptive of the committee's normal operations.

f. The student shall be sent a copy of the committee's decision which shall be final subject to the student's right of appeal.

g. The faculty-student disciplinary committee shall consist of three faculty and three student members plus a chairperson. The faculty members shall be selected by lot from a panel of six elected annually by the appropriate faculty body from among the persons having faculty rank or faculty status and the student members shall be selected by lot from a panel of six elected annually in an election in which all students registered at the college shall be eligible to vote. In the event that the student or faculty panel, or both are not elected, the president shall have the duty to select the panel or panels which have not been elected. No member of the committee shall serve more than two consecutive terms. The chairperson of the committee shall be selected by the committee from among the remaining members of the panel and shall have the power to vote in case of a tie. A quorum shall consist of at least two students and two faculty members. Persons who are to be participants in the hearing as witnesses or have been involved in preferring charges or who may participate in appeals procedures or any other person having a direct interest in the outcome of the hearing shall be disqualified from serving on the hearing panel. A lawyer from the general counsel's office of the board may be present to act as legal advisor to the committee.

requested that Dr. Gold reschedule conferences on those two charges and, in addition, schedule a conference regarding a third disciplinary charge that had since been lodged against him.[3] Dr. Gold refused all of Mr. Turof's requests, ostensibly because of Mr. Turof's failure to appear at the first two scheduled conferences.[4] Instead, Dr. Gold scheduled a disciplinary hearing on the three charges to be held on February 23, 1981, at 4:00 P.M.

In accordance with the By-laws as interpreted by the Disciplinary Committee, Mr. Turof was allowed to have an attorney present at the hearing to advise him, although he was required to conduct his own defense. Mr. Turof's attorney, Gregory Nolan, was permitted to make an opening statement, confer with Mr. Turof and conduct an examination of one witness.

The Disciplinary Committee, which was comprised of students and faculty, subsequently found that Mr. Turof had not violated school rules and regulations regarding smoking marijuana on campus as charged in the first complaint against him. He was found to have violated rules and regulations regarding physical assaults and altercations with school security guards as charged in the second and third complaints. He was suspended and barred from the campus until the Spring, 1982 semester. The Disciplinary Committee also required evidence of

Mr. Turof's active participation in a therapeutic program as a condition to readmission.

■ Mr. Turof appealed the Committee determination to the President of the College, Robert Hess. That appeal was denied on May 6.[5]

Mr. Turof argues that the school's failure to afford him a pre-hearing informal conference constituted a due process violation. In addition, he claims that at the disciplinary hearing itself, he was denied due process in that he was denied the assistance of counsel, the means to compel the attendance of witnesses on his behalf and the right of cross-examination; in that he was required to conduct his own defense and that he was confronted with three unrelated complaints which should have been considered in separate hearings; in that the complainants, security guards, were permitted representation by a third party and in that the Disciplinary Committee's legal advisor also advised the complainant's representative.

■ Although Mr. Turof's list of due process violations is exhaustive, he relies primarily on two claims: the College's failure to afford him a pre-hearing informal conference; and the disciplinary Committee's interpretation of the By-laws in not

---

3. The first charge involved the use of marijuana on the Brooklyn College Campus. The two subsequent charges involved unrelated physical confrontations with campus security guards.

4. See Section 15.3(c)(3) of the Student Disciplinary Procedure, note 2, supra.

5. Section 15.4 of the By-laws governs the appeal procedure. It provides:

Section 15.4 APPEALS. An appeal from the decision of the faculty-student disciplinary committee may be made to the president who may confirm or decrease the penalty but not increase it. His/her decision shall be final except in the case of dismissals or suspension for more than one term. An appeal from a decision of dismissal or suspension for more than one term may be made to the appropriate committee of the board. Any appeal under this section shall be made

in writing within fifteen days after the delivery of the decision appealed from. This requirement may be waived in a particular case for good cause by the president or board committee as the case may be. If the president is a party to the dispute, his/her functions with respect to an appeal shall be discharged by an official of the university to be appointed by the chancellor.

Because Mr. Turof's suspension exceeds one term, the By-laws give him the option of a further appeal to the Board of Trustees. Mr. Turof has chosen not to exercise this option, nor do we require him to do so before proceeding with this action. See McNeese v. Board of Ed., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Gill v. Monroe City Dept. of Soc. Serv., 79 F.R.D. 316 (W.D.N.Y.1978); Turano v. Board of Ed. of Island Trees, 411 F.Supp. 205 (E.D.N.Y.1976).

allowing Mr. Turof's counsel to represent him.[6]

## II—Pre-hearing Conference

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court set forth the minimum procedural requirements mandated by the Due Process Clause in the case of a student suspension of a duration not exceeding 10 days. The Court held that written notice of the charges and "if [the student] denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story [are the] rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Id.* at 582, 95 S.Ct. at 740. The Court did not require formal hearings, the opportunity to be represented by counsel, a right of confrontation or cross-examination of witnesses or an opportunity to call witnesses. *Id.* at 585, 95 S.Ct. at 741.

These minimum protections of notice and an informal hearing were explicitly limited to suspensions not exceeding ten days duration. *Id.*, 95 S.Ct. at 741. "Longer suspensions or expulsions," the Court noted, "may require more formal procedures." *Id.*, 95 S.Ct. at 741.

The informal conference procedure afforded by the Brooklyn College By-laws is the procedural equivalent of the notice and opportunity to explain minimum due process standard set forth in *Goss*. Were this the only procedural protection afforded by

Brooklyn College, Mr. Turof's suspension might well violate the Fourteenth Amendment for two reasons. First, the procedure itself might be found insufficient because Mr. Turof's suspension exceeded ten days. Second, assuming the constitutional adequacy of the procedure, the College's failure to properly notify him about the conferences and allow him an opportunity to explain the charges, regardless of the length of the suspension, would violate the minimum requirements set forth in *Goss*.

■ Nevertheless, the informal conference does not encompass the entire panoply of procedural protections set forth in the By-laws.[7] Given the By-laws provision for a hearing upon notice, participation of counsel and cross-examination, were Brooklyn College to eliminate entirely its informal conference procedures, the remaining procedures would exceed the minimum requirements set forth in *Goss*. The mere fact that they have chosen to include the informal conference provision does not mean that the provision is constitutionally mandated.

The Second Circuit Court of Appeals has stated that it is "not inclined to hold that every deviation from a university's regulations constitutes a deprivation of due process." *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972).[8] In *Winnick*, procedural irregularities were committed during the course of a preliminary suspense hearing, but those defects were found to be "cured by the full disciplinary hearing . . . which

---

6. Defendants claim that there is no jurisdiction over Brooklyn College. We reject this contention as there is no doubt here but that Mr. Turof is challenging the policies and practices of that institution. *See Monell v. Department of Social Services of the City of N. Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The defendants suggest nonetheless that Brooklyn College is a State, not a City institution. Thus, defendants contend, it is not a "person" for purposes of 42 U.S.C. § 1983. While we doubt that this contention can be supported, at least until the State assumes full financing for the City University senior colleges in July, 1982, *see N. Y. Educ. Law* § 6221(A)(4) (McKinney Supp. 1980–81), it is not necessary, given the disposition of this case, to resolve this question at this juncture.

7. *See* note 2, *supra.*

8. The question of whether an agency's violation of its own regulations ever constitutes a violation of due process when the regulations themselves are not constitutionally or statutorily mandated is one which has not been clearly resolved, although it has been addressed in both civil and criminal contests. *See, e.g., United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 93 n. 8, n. 22, 98 S.Ct. 948, 956 n. 8, 964 n. 22, 55 L.Ed.2d 124 (1978).

in effect was a trial de novo." *Id.* at 549. The Court went on to say that in *Winnick* "the alleged deviations did not rise to constitutional proportions and did not constitute in themselves a denial of due process . . . and did not affect the fundamental fairness of the hearing." *Id.* at 550.

In the instant case, Mr. Turof was afforded a full hearing. Whatever other allegations he presents as to the fairness of that hearing aside, the fairness of the hearing was not affected by the absence of the conferences.

Mr. Turof claims that had conferences been held, some or all of the charges may have been resolved, obviating the need for the hearing. While assuming *arguendo* that this is true, it does not force the conclusion that the hearing was consequently unfair.

The hearing procedure provides greater protection than the informal conference and is designed to lessen the chance of an unjustifiable suspension or other disciplinary measure. This does not imply that the informal conference is a meaningless exercise. It is clearly a more expeditious and simpler means of resolving less complex cases. The Brooklyn College Trustees may well prefer it in the first instance to the more involved and time consuming fact finding hearing of a Disciplinary Committee. Nonetheless, given the safeguards of the full hearing, whatever procedural defects were incurred by Brooklyn College's failure to afford Mr. Turof a pre-hearing conference were "cured by the full disciplinary hearing." *Id.* at 549.

### III—Assistance of Counsel

Mr. Turof's second claim of any significance is that in order to comport with due process, a disciplinary hearing resulting in a suspension for more than one semester requires that the student be allowed to have legal representation and that in fact the By-laws allow such representation at any disciplinary hearing.[9]

■ The Disciplinary Committee interpreted the By-laws as not permitting full participation or representation by counsel, but as allowing counsel to assist and advise the student and participate in part.

In *Wasson v. Trowbridge*, 382 F.2d 807 (2d Cir. 1967), the Circuit Court considered whether a Merchant Marine Cadet was entitled to representation by an attorney at the hearing which preceded his expulsion from the Merchant Marine Academy.[10] The Court found that there was no right to counsel where the hearing was investigative, the government did not proceed through counsel, the individual was mature and educated and had sufficient knowledge of the facts to adequately defend his position. Id. at 812. *See also, Madera v. Board of Ed. of N.Y.*, 386 F.2d 778 (2d Cir. 1967); *Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).

In this case, neither the Disciplinary Committee nor the complainants proceeded through counsel. The Committee did have a legal advisor (but so did Mr. Turof). There is no indication that she conducted any questioning or directed any aspect of the hearing.

The case against Mr. Turof was presented by the head of the College security department. He admitted having had experience in a few similar type hearings.[11] The transcript of the hearing however fails to reveal that this experience gave him any advantage in presentation over Mr. Turof. In addition, the regulations allowed Mr. Turof to be assisted by counsel. The transcript reveals that Greg Nolan, Esq., was present, actively advised Mr. Turof, was given an

---

9. *See* Section 15.3(d) of the Student Disciplinary Procedures, note 2, *supra.*

10. We note that an expulsion constitutes a more severe deprivation than a suspension.

11. This circumstance differs from that in *French v. Bashful*, 303 F.Supp. 1333 (E.D.La. 1969) where the student was disadvantaged by the fact that a "senior law student" prosecuted the complaints. *Id.* at 1337. The law student not only was far more likely to be able to conduct the proceeding but had been chosen "because of his familiarity with legal proceedings." *Id.*

opportunity to make a statement, to speak to the committee and examine a witness.[12] Mr. Nolan's participation far exceeded that anticipated in the regulation.

Furthermore, the transcript reveals that Mr. Turof had sufficient knowledge of the facts to defend himself. While the substantive charges against Mr. Turof continually place his emotional and social maturity in question, the transcript reveals someone who understood very clearly the nature of the charges and what would be required of him in rebutting those charges.[13] Indeed, the Committee did find that Mr. Turof could not be subjected to disciplinary action for the marijuana charge and imposed sanctions upon him only on the basis of the two assault charges.

### IV—Other Claims

■ Mr. Turof's additional claims require little more than passing comment. He claims he was denied the means to compel attendance of witnesses whereas the College could easily compel the attendance of the complainant witnesses because they were its employees. Mr. Turof did have witnesses who testified before the Committee on his behalf. That he could have had others had he been able to compel their appearance may have been a source of frustration for him, but does not rise to the level of a constitutional deprivation.[14]

Mr. Turof claims he was denied the right of cross-examination. The transcript does not reveal where or when he was denied the opportunity to cross-examine any witness.

■ He additionally claims that he was prejudiced by the fact that the three complaints were considered in the same proceeding. There is no indication that he was so prejudiced. The Disciplinary Committee was able to consider separately the evidence on the three charges. It found that the marijuana charge was unsupportable. It did find a violation on the other two charges. The facts underlying one of those charges had also formed the basis for an action in a New York State Court by a security guard against Mr. Turof. Mr. Turof had been adjudicated guilty. It is thus no surprise that the Committee found he had committed the acts alleged. This finding on this one charge in itself would have been sufficient to justify the disciplinary action taken here.

Finally, Mr. Turof alleges that the Committee's legal advisor also advised the complainant's representative. This claim by Mr. Turof is the only one in which there is factual contest. During the course of the hearing the legal advisor and the head of security were observed speaking. Mr. Turof and Mr. Nolan accused the legal advisor of assisting the security officer. She denied that she was assisting him.

■ These factual differences will not defeat defendant's motion for summary judgment. "Summary judgment should not be denied where the only issues raised are frivolous or immaterial ones." *United States v. Matheson*, 532 F.2d 809 (2d Cir.),

---

12. Mr. Turof's assertion that Mr. Nolan was allowed to examine the witness only because the hour was late and it would be to the Committee's convenience to expedite the hearing may well be true. But the Committee was not required to allow Mr. Nolan to conduct any witness examination at all. Their motive in permitting him to do so would be material if it revealed some bias or if their action served to prejudice Mr. Turof. The mere fact of the late hour and their affirmative response to Mr. Nolan's own suggestion that he might expedite the proceeding do not support any charge of unfairness by the Committee or in the conduct of the hearing.

13. Mr. Turof had chosen previously to represent himself in a New York State Court action brought against him by a Brooklyn College

security guard, arising out of the same facts which formed the basis of one of the Brooklyn College complaints. He was unsuccessful in his defense.

14. A school disciplinary hearing cannot be deemed unfair because there is an employer-employee relationship between some of the parties which serves to assure the attendance of employees who happen to be witnesses. Mr. Turof's witnesses were other students and at least one of them was an acquaintance of his. These relationships have a significance independent of their "witness compelling" function. All of the witnesses, except for Mr. Turof's witnesses, were actual participants in the events which formed the basis of the charges.

*cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 185 (1976). The factual question here is simply not material. Even assuming that in this instance, the Committee's legal advisor provided some unknown type of assistance to the complainant's representative, it did not, given the length and scope of the hearing amount to a constitutional deprivation.

## V

In *Goss v. Lopez, supra,* the Supreme Court stated that a student has a constitutionally protected interest in avoiding an "unfair or mistaken exclusion from the educational process." 419 U.S. at 580, 95 S.Ct. at 739. That interest must be balanced against the school's interest in maintaining discipline. The Brooklyn College By-laws establish a set of procedures which are designed to ensure the protection of the students' interest, while furthering its own. Those procedures comport with the requirements of due process. Furthermore, we find that Mr. Turof's hearing adequately conformed to the procedures set forth in the By-laws.

In view of the foregoing, defendants' motion for summary judgment is hereby granted.

ORDERED.