Dorothy HART, Plaintiff,

v.

FERRIS STATE COLLEGE, et al., Defendants.

No. G83–140 CA.

United States District Court, W.D. Michigan, S.D.

March 8, 1983.

Barbara A. Klimaszewski, William T. Street, Klimaszewski & Street, Saginaw, Mich., for plaintiff.

Steven L. Dykema, Mika, Meyers, Beckett & Jones, Grand Rapids, Mich., Karl Brevitz, Big Rapids, Mich., for Ferris State College.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This action seeks an injunction to prevent defendant Ferris State College from conducting a disciplinary hearing on the subject of plaintiff's arrest for the sale of illegal drugs. Plaintiff is a student at Ferris State. Defendant Ewigleben is the President of .Ferris State, and defendant Peterson is the Hearing Officer, who is responsible for making and enforcing policies involving student discipline at the college. Plaintiff contends that if the hearing is held it will violate her constitutional rights to procedural and substantive due process and to equal protection of the laws, and that she will suffer irreparable harm. This Court previously issued a Temporary Restraining Order and an extension thereof, and now considers the plaintiff's request for a preliminary injunction.

## FACTS

Plaintiff was arrested on January 14, 1983, and charged with selling a total of 12.4 grams of marijuana in two separate transactions to an undercover agent of the Mecosta County Sheriff Department. In a letter of February 3, 1983, plaintiff was charged with off-campus violations of the college's "Misconduct and Discipline Policy and Procedures" statement, namely, being an individual "in violation of federal, state, or local laws, which materially and adversely affects the individual's suitability as a member of the College community." [1] The letter indicated that a college administrative hearing would be held. On February 11, 1983, plaintiff appeared with counsel at a conference with the Hearing Officer designated as a "pre-hearing," at which the procedures for the disciplinary hearing were explained and the potential sanctions, including suspension and expulsion, were described. At this "pre-hearing," plaintiff requested an adjournment of the hearing until after the resolution of the criminal charges, which request was denied.

Plaintiff is a senior at Ferris State and is scheduled to complete the requirements for graduation in the spring quarter which be-

---

1. The full text of the provision is as follows: MISCONDUCT. The following categories of misconduct may arise in the student's relationship as a member of the College community. Enumeration of specific offenses within a category is illustrative, not restrictive. Included also are aiders and abettors, as well as those individuals who threaten or attempt to commit offenses.
OFF–CAMPUS VIOLATIONS. Further disciplinary or restricting action may be taken when the student is on property other than the College campus and when the individual is:
(a) obstructing or interfering with the activities of the College;
(b) claiming to represent or act in behalf of the College when not authorized to so represent or so act;
(c) in violation of federal, state, or local laws, which materially and adversely affects the individual's suitability as a member of the College community.

gins March 1, 1983. She alleges that if prevented from doing so this term, she will be unable to complete her course requirements for graduation until the spring quarter of 1984, when the classes she is required to complete will be offered again. Plaintiff further states that the program in which she is enrolled, Printing Management, is the only program of its kind in the area, and that if excluded from this program at Ferris State she will be unable to enroll in a comparable program. She alleges that she will suffer permanent and irreparable harm to her academic record and personal reputation if she is deprived of her constitutional rights in connection with the proposed disciplinary hearing.

The constitutional rights with which plaintiff is concerned are primarily rights of procedural due process. In particular, plaintiff claims that the College's hearing procedure will deprive her of her alleged rights to:

a) the disposition of criminal charges against plaintiff prior to a disciplinary hearing by the College;

b) a hearing at which plaintiff receives the effective assistance of counsel, including the right to examine witnesses and take an active role in the proceedings;

c) a hearing at which plaintiff will have an opportunity to confront her accusers and examine their testimony, with the assistance of counsel;

d) a hearing which is open to the public;

e) remain silent without being penalized for her silence, as guaranteed by the Fifth Amendment.

Plaintiff also claims that the threatened imposition of penalties for off-campus acts which do not affect the security or functioning of the college in any respect is a violation of her right to remain in a state college, a protected property and liberty interest under the substantive due process guaranteed by the Fourteenth Amendment. She further claims an equal protection violation in that she is treated differently from non-student defendants of illegal drug charges, and she also claims a violation of the Michigan Open Meetings Act.

## STANDARD FOR PRELIMINARY INJUNCTIONS

In deciding whether a preliminary injunction is appropriate, four factors are considered: (1) the likelihood of success on the merits, (2) the irreparable nature of the harm to the party seeking injunctive relief, (3) the balance of the injury as between the parties, and (4) the impact of the ruling on the public interest. *E.g., Mason County Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977). The wording of the first factor in the decisions of the Sixth Circuit has not been totally consistent. The Court has sometimes referred to "a possibility of success on the merits." *SEC v. Senex Corp.,* 534 F.2d 1240, 1241 (6th Cir.1976). That articulation has been criticized as "unfortunate terminology," and the Court later required plaintiffs to demonstrate "a strong or substantial likelihood or probability of success on the merits." *Mason County Medical Ass'n,* 563 F.2d at 261, n. 4. More recently, the Court addressed any apparent inconsistency by quoting with approval from an opinion of District Judge Feikens in *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n. v. HEW,* 418 F.Supp. 585, 586 (E.D.Mich.1976):

This apparent disparity in the wording of the standard merely reflects the circumstances that no single factor is determinative as to the appropriateness of equitable relief. In addition to assessing the likelihood of success on the merits, the court must consider the irreparability of any harm to the plaintiff, the balance of injury as between the parties, and the impact of the ruling on the public interest. In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction .... It thus appears that the precise wording of the standard for the likelihood of success on the merits is not as important as a realistic appraisal of all the traditional factors weighed by a court of equity. A balancing is required, and not the mechanical application of a certain form of words.

*Roth v. Bank of Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

The *Roth* opinion also noted that the Sixth Circuit has cited with general approval the oft-quoted test of Judge Jerome Frank in *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953):

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation. (footnote omitted)

The Court has recently emphasized that this alternate or "balance of hardships" test, the purpose of which is to underscore the flexibility that traditionally has characterized the law of equity, does not eliminate the irreparable harm requirement. *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6th Cir.1982).

With these standards in mind, this Court proceeds to consideration of plaintiff's likelihood of success on the merits.

## PROCEDURAL DUE PROCESS

■ It is undisputed that the threat of suspension or expulsion implicates plaintiff's property and liberty interests in public education and reputation, and that such interests are within the purview of the due process clause of the Fourteenth Amendment. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Dixon v. Alabama State Board of Education,* 294 F.2d 150, *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); *Nzuve v. Castleton State College,* 133 Vt. 225, 335 A.2d 321 (1975). The issue is what procedures are constitutionally required in order that the deprivation of such interests not be suffered without due process of law. "Once it

is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

The seminal opinion discussing the dictates of due process in this context is *Dixon.* Indeed, the Supreme Court has described the opinion as a "landmark decision." *Goss,* 419 U.S. at 577, n. 8, 95 S.Ct. at 738, n. 8. After holding that due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct, the *Dixon* court elaborated as follows:

> For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. They should, we think comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witness, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching

upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection. If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled.

294 F.2d at 158–59.

In this case the procedural rights provided under Ferris State's policy statement go significantly beyond the minimum requirements discussed in *Dixon*. The policy statement provides for not only notice of the claimed misconduct, but also for a state-ment setting forth the possible consequences of a finding which sustains the charges, the right of the student to consult with counsel, the right of the student to his choice of two types of hearings, and the procedures under which the hearing will be conducted. The hearing procedure entitles the student to a number of rights in addition to the right to be presented with the evidence against him and the right to present his own defense and produce testimony or written statements on his behalf. Thus, the student "shall have the right to consult counsel." He is given the right "to have witnesses produced by the College if reasonably possible." The student is given the right to question witnesses, and to "make a statement, in writing or orally, personally, or by an agent, representative, or counsel, or he may remain silent during the hearing." "In no case" will he "be heard by anyone who is a witness in the case, or who has initiated the complaint against him." The student is entitled to a "decision in writing together with reasons for the decision," and certain appeal rights are provided.[2]

2. The full text of the pertinent portions of the policy statement is as follows:

PROCEDURES. Official College disciplinary actions will be applied to students who are involved in misconduct in accordance with the following procedures:

(3) CHARGES. The student will be supplied with a written or printed statement setting forth:

(a) the claimed misconduct.

(b) the claimed violation.

(c) the possible consequences of a finding which sustains the charges.

(d) the right of the student to consult with counsel.

(e) the right of the student to have a hearing conducted by the Hearing Officer or the College Committee on Discipline at the student's option, and the procedures under which the hearing will be conducted.

(f) Failure or refusal of the student to accept services of the charges or to respond thereto will result in referral of the charges to the College Committee on Discipline for hearing.

(4) HEARINGS. Hearings on all charges which may result in probation, suspension and/or dismissal are mandatory. All hearings conducted by the Hearing Officer or the College Committee on Discipline, may include written statements or oral testimony of witnesses, which written statements or oral testimony shall be submitted in the presence of the person charged. The student shall have the right to consult counsel, to produce testimony by written statement or oral testimony and to have witnesses produced by the College if reasonably possible.

The student may question witnesses appearing at the hearing or the accuracy of written reports or complaints but all such questioning shall be conducted solely by the student himself. He may make a statement, in writing or orally, personally, or by an agent, representative, or counsel, or he may remain silent during the hearing. In no case will the student charged with a violation be heard by anyone who is a witness in the case, or who has initiated the complaint against him.

(5) DECISION. Upon the conclusion of the hearing, the Hearing Officer or the College Committee on Discipline (by its Chairman) shall summarize the substance of the information received at the hearing and make its findings to the President or his designated representative together with recommendations. The President or his officially designated representative will consider the report and the recommendations, and upon adjudication the student and/or his guardian shall be advised of the decision in writing together with reasons for the decision.

## POSTPONEMENT OF HEARING AND THE RIGHT TO REMAIN SILENT

As noted above, plaintiff contends that these procedures are deficient in several respects. First, she claims that a failure to adjourn the disciplinary hearing until after the pending criminal charges are resolved will deprive her of due process. This is related to her claim that her right to remain silent without being penalized for her silence is threatened by the proposed disciplinary hearing. Plaintiff does not claim that her right to remain silent itself will be denied, for the written College procedures clearly provide that the student "may remain silent during the hearing." Rather, plaintiff's argument is that if the disciplinary hearing is held prior to resolution of the criminal charges, she may have to testify to avoid expulsion; if she does testify under the compulsion of otherwise being expelled, she may be denied her Fifth Amendment rights because her testimony at the hearing may be used against her in the subsequent criminal trial. Plaintiff's concern is substantiated in her verified complaint, in which she states that the Mecosta County Prosecutor has publicly stated his intention to subpoena any testimony at student disciplinary hearings which he deems pertinent to a related criminal charge.

A number of courts have faced this precise issue of whether postponement of a college disciplinary hearing until resolution of related criminal charges is constitutionally required; all have rejected plaintiff's argument. In *Furutani v. Ewigleben,* 297 F.Supp. 1163 (N.D.Cal.1969), the plaintiffs were students charged by the college authorities with unlawful actions during campus demonstrations. A variety of criminal charges, based on the same actions, were brought against the plaintiffs. In refusing to order the postponement of any expulsion hearings until after the criminal trials, the *Furutani* court reasoned that if the stu-

dents are forced to incriminate themselves at the disciplinary hearing to avoid expulsion, then under the authority of *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) such incriminating statements would be inadmissible in any subsequent criminal proceeding because they would have been obtained by compulsion. Therefore, the court found, the proposed disciplinary hearings posed no threat to the Fifth Amendment rights of the students. *Accord, Keene v. Rodgers,* 316 F.Supp. 217, 221–22, n. 4 (D.Me.1970).

The Supreme Court of Vermont expressly concurred with the *Furutani* reasoning in the factually similar case of *Nzuve v. Castleton State College,* 133 Vt. 225, 335 A.2d 321 (1975). The *Nzuve* court also cited "[a]n acknowledged leading case on the subject matter," *Goldberg v. Regents of University of California,* 248 Cal.App.2d 867, 57 Cal.Rptr. 463 (1967), for the proposition that discipline imposed by a college or university need not await the outcome of other proceedings. The *Nzuve* court explained why they felt this result was a fair and appropriate balancing of all the interests involved as follows:

> Educational institutions have both a need and a right to formulate their own standards and to enforce them; such enforcement is only coincidentally related to criminal charges and the defense against them. To hold otherwise would, in our view, lead logically to the conclusion that civil remedies must, as a matter of law, wait for determination until related criminal charges are disposed of. By parallel, the owner of stolen property could not obtain damages or its recovery until criminal prosecution had been completed. Similarly, in the instant case, the complaining witness could not have redress for the assault on her, if proven, until the pending criminal charges had run their long course of trial and appeal. Nor would it be at all unusual for the tempo-

The student shall be conclusively presumed to have received the decision after personal service upon him of the decision, or within two days after the decision has been deposited in the United States mail addressed to the

student at his student address during the academic year while the student is enrolled at the College or addressed to the student at his home address when the student is not presently enrolled at the College.

rary relief here sought to enable the plaintiff to complete his education, thus effectively completing an "end run" around the disciplinary rules and procedures of the college.

We are unwilling to reach such a result. We do not view such a holding as compelled by due process requirements or equitable principles generally.

335 A.2d at 325. *See generally DeVita v. Sills,* 422 F.2d 1172, 1178–80 (3rd Cir.1970) (Fifth Amendment does not require postponement of civil proceedings whenever related criminal charges are pending).

After concurring with the *Furutani* reasoning, the *Nzuve* court continued its discussion as follows:

> Further, the unchallenged findings of the trial court, based on stipulated college court procedures, are that upon student trial Nzuve is permitted to remain silent, without his silence being used against him. His testimony, if given, at the college student trial could be only the result of his voluntary election, under which circumstances the Fifth Amendment would not apply. Like any voluntary statement given with knowledge of rights, it would be admissible in the criminal trial; if not voluntary, or given without such knowledge, it would be excludable under *Garrity.* No injunctive process to protect any rights of the plaintiff here would appear to be required.

335 A.2d at 326. The same is true in the case before this Court. It is clear that plaintiff is permitted to remain silent. It appears that her silence may not be used against her. The policy and procedure statement neither requires nor prohibits the drawing of an adverse inference from the silence of the accused. The uncontroverted affidavit of the Hearing Officer states that, "It [silence] does not work against you. It will not necessarily work to your favor." There is no indication that the silence of an accused will be considered as either pointing to or being conclusive evidence of guilt. Accordingly, any testimony of plaintiff at the hearing would likely be voluntary, in which case the Fifth Amendment would not apply.

A similar analysis was used to decide that a student's testimony at a college disciplinary hearing was not compelled testimony in *Gabrilowitz v. Newman,* 582 F.2d 100, 104 (1st Cir.1978). The court described the position of a student whose testimony is not compelled as follows:

> Appellee's testimony would be, therefore, entirely voluntary and subsequently admissible at the criminal case. Although the possibility of expulsion may make participation a wise choice, the hearing procedures do not place appellee "between the rock and the whirlpool." *Garrity v. New Jersey, supra,* 385 U.S. at 498, 87 S.Ct. at 619. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.
>
> ... Although the choice facing him is difficult, that does not make it unconstitutional.

The decisions described above all lead to the conclusion that plaintiff is not entitled to an injunction against the proposed disciplinary proceeding on the basis of the pending criminal charges. Plaintiff has not submitted any authority to the contrary. The Court finds that plaintiff is not at all likely to prevail on the merits of this claim.

## CROSS–EXAMINATION OF WITNESSES BY COUNSEL

Plaintiff also contends that the College's procedures are deficient in that they do not afford her the right to have her attorney conduct cross-examination of the witnesses. The procedures do provide plaintiff the right to question witnesses herself, the right to consult with counsel, and the right to have counsel make a statement on her behalf. The issue is whether Ferris State is constitutionally required to allow counsel to take a more active role in the conduct of the hearing.

It is not beyond doubt that students have a general right to counsel at disciplinary hearings. The decisions of the courts have gone both ways. *Gabrilowitz*, 582 F.2d at 104–05.[3] In *Gabrilowitz* it was held that where related criminal charges were pending, the denial to a student of the right to have a lawyer of his own choice consult with and advise him during a university disciplinary hearing without participating further in such proceeding would deprive the student of due process of law. The court was careful in its decision to describe a limited role for counsel and to emphasize the significance of the pending criminal case. The court was not faced with the question of whether due process requires that counsel be allowed a more active role, because plaintiff did not assert a right to have counsel examine witnesses; all he wanted was that a lawyer be at his side during the hearing for consultation and advice.

Although several courts have held that due process requires that students involved in disciplinary hearings with significant sanctions be given the right to counsel and the right to cross-examine witnesses,[4] and a few decisions contain language that suggests that the student does or does not have the right to have the cross-examination conducted by his attorney,[5] it appears that no

**3.** For example, in *Wasson v. Trowbridge,* 382 F.2d 807 (2d Cir.1967), it was held that a Merchant Marine Cadet had no right to counsel at disciplinary and expulsion hearings:

Wasson most strenuously has urged that he was entitled to representation by counsel at one or both of the challenged hearings. We disagree. The requirement of counsel as an ingredient of fairness is a function of all of the other aspects of the hearing. Where the proceeding is non-criminal in nature, where the hearing is investigative and not adversarial and the government does not proceed through counsel, where the individual concerned is mature and educated, where his knowledge of the events of March 30th should enable him to develop the facts adequately through available sources, and where the other aspects of the hearing taken as a whole are fair, due process does not require representation by counsel. It is significant that in the *Dixon* case where the balancing of government and private interests favored the individual far more than here, the court did not suggest that a student must be represented by counsel in an expulsion proceeding. 382 F.2d at 812. In contrast, where students were disadvantaged by the fact that a "senior law school student" prosecuted the complaints of misconduct, an asserted right to counsel was upheld. *French v. Bashful,* 303 F.Supp. 1333 (E.D.La.1969). The university was in effect proceeding through counsel, since the law student was chosen to prosecute the cases "because of his familiarity with legal proceedings."

**4.** *See Givens v. Poe,* 346 F.Supp. 202 (W.D.N.C. 1972) (students have right to counsel and right to confront and examine adverse witnesses); *Fielder v. Board of Education,* 346 F.Supp. 722 (D.Neb.1972) (right to cross-examine is constitutionally required; right to counsel and cross-examination by counsel is at least "good technique"). In *Mills v. Board of Education,* 348 F.Supp. 866 (D.D.C.1972), the court prescribed hearing procedures for a class of young students with special needs which procedures included the right to a representative, which could be legal counsel, and the right of the parent or guardian, *or* his representative, to confront and cross-examine witnesses. In *Marin v. University of Puerto Rico,* 377 F.Supp. 613 (D.P.R.1974), the court held that *the students* were entitled to cross-examine opposing witnesses with the assistance of retained counsel. In neither case was the court squarely faced with the question of whether the student is constitutionally entitled to have his attorney conduct cross-examination; in *Mills* the right is stated in the disjunctive, and *Marin* does not describe the required scope of the assistance of counsel.

**5.** In *Esteban v. Central Missouri State College,* 277 F.Supp. 649 (W.D.Mo.1967), the court prescribed hearing procedures which included the following: "plaintiffs (not their attorney) may question at the hearing any witness who gives evidence against them." This statement suggests the absence of any right to cross-examination by counsel, but it is not clear that plaintiffs were asserting any such right in that case. A similar suggestion is found in *Turof v. Kibbee,* 527 F.Supp. 880 (E.D.N.Y.1981). In that case the Disciplinary Committee had interpreted the By-laws as not permitting full participation or representation by counsel, but as allowing counsel to assist and advise the student and participate in part. In a footnote the court stated that "the Committee was not required to allow [the student's counsel] to conduct any witness examination at all." 527 F.Supp. at 886 n. 12. However, in upholding the validity of the hearing procedures provided, the court relied in part on the fact that the attorney had actually been permitted to actively advise the student and examine a witness.

A contrary suggestion, can be found in *Speake v. Grantham,* 317 F.Supp. 1253 (S.D.

court has faced the precise question posed here: whether due process entitles the student to cross-examine witnesses through counsel, or whether due process is provided when the student may have an attorney present for advice and consultation, but the questioning of witnesses may only be done by the student.

■ The criteria which determine the parameters of procedural due process were stated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The Sixth Circuit makes the following observations about the *Mathews* analysis:

> The Supreme Court has consistently rejected a concept of due process which would afford all complaining parties, whatever the context of the dispute, an inflexible "check-list" of legal rights. On the contrary, procedural due process issues, originating as they may in diverse situations, demand a more sensitive judicial approach. Thus, we find in *Mathews, supra,* an analysis designed to balance competing interests in lieu of imposing rigid legal formulae.

*Frumkin v. Board of Trustees, Kent State University,* 626 F.2d 19, 21 (1980).

Applying a *Mathews* analysis here, the first consideration is that the private interest at stake, the right to a public education, is a substantial one. "[E]ducation is perhaps the most important function of state and local governments," *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), and the total exclusion from the educational process for more than a trivial period is a serious event in the life of a student. *Goss v. Lopez,* 419 U.S. at 576, 95 S.Ct. at 737. The importance of this interest was also addressed in *Dixon,* 294 F.2d at 157:

> It requires no argument to demonstrate that education is vital and, indeed, basic to civilized society. Without sufficient education the plaintiffs would not be able to earn an adequate livelihood, to enjoy life to the fullest, or to fulfill as completely as possible the duties and responsibilities of good citizens.

The risk of an erroneous expulsion must be considered in the context of the procedures to be used at the proposed hearing. As discussed above, plaintiff is afforded numerous procedural rights, including advance notice of the charges, presentation of the evidence against her, an opportunity to present a defense including production of testimony and the making of a statement, the right to have witnesses produced for questioning where possible, and a written reasoned decision. The risk of error in the truthfinding process employed by the College, which includes these and the other procedural safeguards described earlier, is relatively slight.

Miss.1970), *aff'd per curiam,* 440 F.2d 1351 (1971), where the court declared that plaintiffs and their counsel shall have the right of cross-examination. However, the *Speake* court cites as its authority *Marzette v. McPhee,* 294 F.Supp. 562, 567 (W.D.Wis.1968), where the right is phrased in terms of the student *or* his attorney questioning the witnesses. Similarly, a contrary suggestion is found in *Dillon v. Pulaski County Special School District,* 468 F.Supp. 54 (E.D.Ark.1978), where the court discussed the desirability of producing plaintiff's accuser to submit to cross-examination *by plaintiff's attorney.* In the next sentence, the court then said that "due process clearly demanded that *the plaintiff* should have been given an opportunity to question" the witness [emphasis added]. This inconsistency indicates that the court probably did not intend to rule that cross-examination by the attorney was required; the question faced by the court, and the one on which it ruled, was whether a particular accusing witness had to be produced for some sort of explanation and questioning.

The value of cross-examination is in exposing falsehood and bringing out the truth. *Pointer v. State of Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The value of having counsel conduct cross-examination is that it can be done more effectively by one who is trained and experienced in the task. However, the probable value of the additional procedural safeguard of allowing plaintiff's counsel to conduct cross-examination is rather minimal where plaintiff is allowed to question witnesses herself and to consult with counsel. Under the guidance of her attorney, plaintiff, a college senior, can probably make whatever points through the questioning of witnesses that her attorney could; it just may be done in a less efficient manner.

Finally, the Court must consider the interests of the College, including the function involved and the fiscal and administrative burdens that the additional procedural requirement would entail. As to the function involved, "Academic institutions have a significant interest in the promulgation of procedures for the resolution of student disciplinary problems." *Gabrilowitz,* 582 F.2d at 106. The fiscal burden of cross-examination by plaintiff's counsel would primarily fall on plaintiff, with the College perhaps losing the value of additional time spent by its employees at disciplinary hearings. However, the administrative burden would not be insubstantial. A more active role by counsel would inevitably be more intrusive from the College's point of view. *See Gabrilowitz, id.* If plaintiff's counsel were permitted to cross-examine witnesses, the College might well find it desirable to have counsel ready to represent its own interests in insuring that witnesses not be harassed and that plaintiff's witnesses be subjected to equally searching cross-examination. The entire character of the hearing could easily be escalated into a fully adversary proceeding. As the landmark *Dixon* decision recognized, a full-dress judicial hearing, including the right to cross-examine witnesses, "with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out." 294 F.2d at 159.

In an analogous situation, the Sixth Circuit was recently persuaded that a university had a legitimate argument in its expressed reluctance to transform the pretermination hearing of a tenured professor into a full-fledged adversary trial. After a *Mathews*-based analysis, the Court rejected the professor's argument that procedural due process required the university to permit plaintiff's counsel to conduct direct and cross-examination of witnesses at the hearing. *Frumkin v. Board of Trustees, Kent State University,* 626 F.2d 19 (1980). Ferris State has a similarly legitimate interest in its apparent desire that student disciplinary hearings not be transformed into full-fledged adversary trials.

In sum, although the affected private interest is a substantial one, the risk of an erroneous deprivation is slight and the probable value of the additional procedure is relatively minimal, whereas the burdens of the additional procedure would be significant. Upon balancing the competing interests, this Court is of the opinion that plaintiff has failed to demonstrate a strong or substantial likelihood or probability of success on the merits of her claim to a right of cross-examination by counsel.

### CONFRONTATION OF ACCUSERS

Plaintiff further contends that the College's procedures are deficient in that plaintiff is not guaranteed an opportunity to confront her accusers and examine their testimony. The procedures provide that the student shall have the right "to have witnesses produced by the College if reasonably possible," and they allow the student to "question witnesses appearing at the hearing or the accuracy of written reports or complaints."

It appears that plaintiff is concerned in particular with the opportunity to confront the agent of the Sheriff Department to whom she allegedly sold illegal drugs. In support of her asserted right to confront her accusers, plaintiff cites two cases which

have generally recognized the importance of the student's right to confront and cross-examine witnesses in disciplinary hearings. *Givens v. Poe,* 346 F.Supp. 202 (W.D.N.C. 1972); *Speake v. Grantham,* 317 F.Supp. 1253 (S.D.Miss.1970), *aff'd per curiam,* 440 F.2d 1351 (1971). However, it is clear in this case that plaintiff is given the opportunity to question witnesses who appear at the hearing.

Three more pertinent cases are cited to the Court in which it was held that particular witnesses needed to be produced at student disciplinary hearings. *Dillon v. Pulaski County Special School District,* 468 F.Supp. 54 (E.D.Ark.1978) *aff'd per curiam,* 594 F.2d 699 (8th Cir.1979); *Fielder v. Board of Education,* 346 F.Supp. 722 (D.Neb.1972); *DeJesus v. Penberthy,* 344 F.Supp. 70 (D.Conn.1972). In the first two, the witnesses in question were accusing teachers; in the latter case, the witness was a fellow student involved in an incident as to which there was a factual dispute on critical issues. In all three cases, the testimony of the witnesses was "readily available" to the school authorities. *See Dillon,* 468 F.Supp. at 58; *DeJesus,* 344 F.Supp. at 75. In the case before the Court, the witnesses to be produced by the College "if reasonably possible" would certainly encompass any who are readily available to the College.

It is not clear how the College could be required to compel the attendance of witnesses over whom it has no power by subpoena or otherwise. In any event, defendant Peterson has testified under oath and without controversy that he has assurances that the officer who allegedly made the purchase from plaintiff will be present at the hearing. In these circumstances, the Court cannot conclude that it is likely that plaintiff will be denied an opportunity to confront and cross-examine the witnesses to be called against her at the hearing.

## PUBLIC HEARING

Plaintiff contends that she has the right to have her disciplinary hearing be open to the public. No authority is cited for the proposition that a closed hearing would constitute a violation of due process. Plaintiff simply argues that there is quite a number of similarly-situated students who would be interested in observing the hearing. It is difficult to understand how the presence of such other students would decrease the risk of an erroneous expulsion, but it is easy to see how their presence could be disruptive to the proceedings. To the extent that plaintiff wishes them to be informed she can supply them with copies of a transcript of the hearing and the written decision. The Court finds that plaintiff is not likely to prevail on this claim.

Plaintiff also contends that a public hearing is required by the Michigan Open Meetings Act, M.C.L.A. § 15.261 *et seq.* Defendant argues that as interpreted by the Opinions of the Attorney General of Michigan, the Act does not apply regardless of which of the two types of hearings plaintiff chooses. If the hearing is conducted by the Hearing Officer, the Act does not apply because it is not applicable to meetings conducted by a single person. If the hearing is conducted by the College Committee on Discipline, the Act does not apply because the Committee merely makes a recommendation to the person who is authorized to make the final decision, and the Act is not applicable to a meeting held by a committee which can only make a recommendation. Plaintiff responds that the Committee should be regarded as a final decision-maker because it is the body which hears the testimony. The Court is not persuaded that plaintiff would be likely to prevail on this claim. In any event, under principles of federalism this Court would be reluctant to enjoin the proceedings of a state agency on the ground that they were being conducted in violation of a state statute.

## SUBSTANTIVE DUE PROCESS

Plaintiff contends that defendants' efforts to impose disciplinary sanctions for conduct which takes place off-campus, does not threaten the security or functioning of the College in any respect, and does not affect plaintiff or other students in their

role as students, violates her right to substantive due process. She also claims such a violation in that the penalty of expulsion is disproportionate to the alleged offense.

The first argument assumes the answer to an issue which must be decided by the College authorities. The offense with which plaintiff is charged requires that the violation of law be one which "materially and adversely affects the individual's suitability as a member of the College community." Thus, plaintiff is free to argue at the hearing that in fact her alleged misconduct had no adverse effect upon the College or its students, and that she is therefore not guilty of any misconduct which would justify disciplinary action. This Court should not presume to predict the outcome of the hearing in that respect.

In addition, it should be noted that an argument quite similar to plaintiff's was rejected in *Krasnow v. Virginia Polytechnic Institute*, 551 F.2d 591 (4th Cir.1977) (per curiam). In that case, the plaintiffs sought an injunction against a college's rule against the unlawful use or possession of drugs by students whether or not on university property and a rule against actions by students leading to convictions for criminal offenses. The students argued "that those rules violate the due process clause of the Fourteenth Amendment because the interest of the university as an educational institution does not require that every unlawful drug use in any location be prohibited or that every criminal act in every location be prohibited." After noting that the plaintiffs failed to allege the deprivation of any constitutional rights or privileges, the court agreed with the district court that the complaint failed to state a claim upon which relief can be granted, and stated: "The university clearly has the prerogative to determine that any unlawful possession of drugs or criminal conduct on the part of students is detrimental to the university." *Id.* at 592.

As for the claim of disproportionate punishment, it is somewhat premature since no disciplinary action has yet been decided upon. However, suspensions or expulsions from school for illegal drug use have been upheld against charges of gross disproportionality violative of substantive due process. *Petrey v. Flaugher*, 505 F.Supp. 1087 (E.D.Ky.1981) (smoking marijuana); *Fisher v. Burkburnett Independent School District*, 419 F.Supp. 1200 (N.D.Tex.1976) (Elavil overdose). *See also Mitchell v. Board of Trustees*, 625 F.2d 660 (5th Cir.1980) (mandatory expulsion for carrying knife upheld against substantive due process challenge). *Cf. Cook v. Edwards*, 341 F.Supp. 307 (D.N. H.1972) (ordering reinstatement of student expelled for intoxication where no evidence of real threat to school discipline, only deterrent justification).

It is important to realize in this context that the charges in this case concern the sale of illegal drugs, not mere use or possession. Because it is a more serious offense, it would be easier for defendants to demonstrate a rational relationship between the punishment and the offense. Based on the foregoing, the Court is of the opinion that plaintiff has failed to demonstrate a strong or substantial likelihood or probability of success on the merits of her substantive due process claim.

## EQUAL PROTECTION

Plaintiff argues that the class of drug offenders who attend state schools suffer greater sanctions than the class of drug offenders who do not attend state schools. Plaintiff does not contend that any fundamental right or suspect class is implicated, or that similarly-situated individuals are not subject to similar treatment. The differential treatment is rationally related to the legitimate government interest of preventing criminal conduct from interfering with public education. There can be a number of similar incidental consequences of criminal involvement, e.g., loss of employment, which do not give rise to equal protection claims. The Court is of the opinion that plaintiff is not at all likely to prevail on the merits of this claim. *See Moore v. Spangler*, 401 Mich. 360, 258 N.W.2d 34 (1977). The same conclusion must be drawn as to the allegation under 42

U.S.C. § 1985(3) that defendants engaged in a conspiracy which deprived plaintiff of her right to equal protection of the laws.[6]

## CONCLUSION

 Having discussed plaintiff's likelihood of success on the merits, the Court must consider the other factors relevant to a request for preliminary injunctive relief. The Court finds that plaintiff has made an adequate showing of irreparable harm in that if she is wrongfully deprived of the opportunity to complete her scheduled classes at this critical juncture, she will likely lose an entire year and suffer harm to her academic record and personal reputation. However, the harm is not certain to occur. If no injunction is issued, plaintiff may yet be found innocent of the charged misconduct, or be given a moderate disciplinary penalty. On the other hand, the College's interest in prompt enforcement of legitimate rules of student conduct means that it will be harmed by the grant of a preliminary injunction. Nevertheless, the balance of hardships tips slightly in plaintiff's favor. The public interest weighs primarily on the defendants' side in maintaining the order necessary to a proper atmosphere conducive to education. In any event, the primary consideration in this case is plaintiff's failure to demonstrate a likelihood of success on the merits. The Court is of the opinion that an equitable balancing of these factors leads to the conclusion that a preliminary injunction should not be issued.

The Court is constrained to emphasize that it is not ruling on the merits of plaintiff's claims in this Opinion. The parties are entitled, if they so desire, to undertake more deliberate investigation and present additional evidence relevant to the merits of these claims. For example, they might wish to submit evidence that would justify a modification of this Court's assessment of the probable value attached to cross-examination by counsel, or of the extent of the burdens imposed by such an additional procedure. The Court's ruling today is limited to a holding that plaintiff's request for preliminary injunctive relief should be denied.

In closing, the Court notes that the observations of the Supreme Court in *Mathews* are appropriate here:

> The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decision-making in all circumstances .... All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard" [citation omitted] to insure that they are given a meaningful opportunity to present their case.

424 U.S. at 348–49, 96 S.Ct. at 909. As the Sixth Circuit felt in *Frumkin,* this Court believes that plaintiff will have ample opportunity to present her case to the college authorities "in a manner calculated to achieve a fair result." 626 F.2d at 21. Such is the essence of due process.

---

**6.** Plaintiff also alleges a separate cause of action pursuant to 42 U.S.C. § 1983. Standing alone, § 1983 does not provide any substantive rights at all; it only gives a remedy. *Chapman v. Houston Welfare Rights Organization,* 441

U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Accordingly, the earlier discussion of the alleged constitutional deprivations disposes of this claim.