221 F.2d 873
 Mary A. SILVER, Chairman, Board of Revocation and Review of Hackers' Identification Licenses, Samuel Spencer, Louis W. Prentiss, Renah F. Camalier, Board of D. C. Commissioners, Appellants,
v.
Ernest L. McCAMEY, Appellee.
 No. 12362.
 United States Court of Appeals, District of Columbia Circuit.
 Argued February 1, 1955.
 Decided March 31, 1955.
 
 Mr. Milton D. Korman, Asst. Corp. Counsel, for District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and Harry L. Walker, Asst. Corp. Counsel, were on the brief, for appellants.
 Mr. Albert J. Ahern, Jr., with whom Mr. James J. Laughlin, Washington, D. C., was on the brief, for appellee.
 Before EDGERTON, BAZELON, and DANAHER, Circuit Judges.
 EDGERTON, Circuit Judge.
 
 
 1
 On March 1, 1954 the plaintiff, then a licensed taxicab operator, was arrested and charged with two crimes of rape, one December 23, 1953 and the other March 1, 1954. Revolver ammunition and a bayonet were found in his cab.
 
 
 2
 He was tried and acquitted on the March 1 charge. While the December 23 charge was pending, the Board of Revocation and Review of Hackers' Identification Licenses directed him to answer charges that he was not of proper character to operate a public vehicle because of the ammunition and weapon and because on December 23, 1953 he "did sexually assault and rob a citizen at gun point". On June 4, 1954 the Board held a hearing on these charges and informed the plaintiff that "after a review of all facts in the case" it had voted to revoke his license to operate a cab. He was afterwards tried, and acquitted, on the December rape charge.
 
 
 3
 The plaintiff sued to require the Board to restore his license. The District Court granted the injunction and the Board appeals.
 
 
 4
 The Board relies on a statute that authorizes the Commissioners of the District of Columbia "to revoke any license * * * when, in their judgment, such is deemed desirable * * *." D.C.Code (1951) § 47-2345, 47 Stat. 563. But "statutes should be interpreted, if explicit language does not preclude, so as to observe due process * * *."[1] We agree with the District Court that due process is not observed if an accused person is subjected, without his consent, to an administrative hearing on a serious criminal charge that is pending against him.[2] His necessary defense in the administrative hearing may disclose his evidence long in advance of his criminal trial and prejudice his defense in that trial.
 
 
 5
 It does not follow, as the Board contends, that the public must be left without protection against an accused hacker pending his criminal trial. (1) The Board may hold a hearing on other charges and, if it finds them sufficient, revoke his license. But we do not know that the Board thought the other charges against this plaintiff were sufficient. (2) We agree with the District Court that nothing prevents the Board, while a criminal charge is pending, from holding a hearing and taking action on the question whether, because it is pending, a license should be temporarily suspended. Such temporary suspension is in some respects like a denial of bail. Though each is exceptional, each is sometimes necessary to the protection of the public. Immediate revocation of a license is not. Since neither denial of bail nor suspension of a license involves a finding of guilt or a permanent loss of employment, the hearing involved in either need not require disclosure of defenses to the criminal charge. Accordingly temporary suspension of a license, unlike revocation, pending a serious criminal charge, need not be inconsistent with due process.
 
 
 6
 Our affirmance of the District Court's judgment is without prejudice to any future proceedings to revoke the plaintiff's license. We do not share the District Court's view that the Board cannot retry a criminal charge on which the plaintiff has been tried and acquitted in court. "That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled." Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917. For at least two reasons, res judicata does not apply. (1) Acquittal may mean only that material facts are not proved beyond a reasonable doubt. It may still be possible to prove them sufficiently for civil and administrative purposes. (2) Asserted facts that cannot be proved by any standard, and are material in the criminal prosecution, may be immaterial in the administrative proceeding. Misconduct need not amount to rape in order to show that a man is unfit to operate a taxicab.
 
 
 7
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Mr. Justice Frankfurter, concurring, in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 165, 71 S.Ct. 624, 645, 95 L.Ed. 817
 
 
 [2]
 Ex parte Wall, 107 U.S. 265, 287, 288, 2 S.Ct. 569, 27 L.Ed. 552, is not to the contrary; a lawyer was disbarred for an offense that was criminal, but no criminal charge had been brought against him. And his denial, in the disbarment proceeding, "was really equivalent to an admission of the substantial matter of the charge." 107 U.S. at page 275, 2 S.Ct. at page 578
 
 
 
 8
 DANAHER, Circuit Judge (dissenting).
 
 
 9
 The majority say "that due process is not observed if an accused person is subjected, without his consent, to an administrative hearing on a serious criminal charge that is pending against him." The only inquiry before the Board involved McCamey's fitness to drive a taxicab, and as I see this case, the trial court erred in issuing a mandatory injunction to compel District officials to rescind an order of revocation they were authorized to issue in the first place.
 
 
 10
 The trial judge specifically found that "The transcript of proceedings before said Board shows that all of the requisites of procedural due process of law were accorded him at the hearing conducted by said Board on June 4, 1954." Examination of the whole record discloses that there was a complete and a fair hearing and that the Board of Revocation and Review of Hackers' Identification Licenses had a proper and rational basis for its order revoking petitioner's hacker's license. The Board was the administrative body to which the determination complained of had been legally entrusted. Whether the Board had authority to suspend rather than revoke the hacker's license is not the question but whether in the exercise of its authorized discretion the Board had power to revoke. It is not for us to insist that the Board should have followed some other course if, legally, it was authorized to do what it did. Brodie v. Young, 1943, 77 U.S.App.D.C. 169, 133 F.2d 406; Gray v. Powell, 1941, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301; Swayne & Hoyt v. United States, 1937, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659.
 
 
 11
 D.C.Code, § 47-2331(e) (1951) provides that no person shall operate a taxicab without having procured from the Commissioners a license and a badge "neither of which shall be issued except upon evidence satisfactory to the director of motor vehicles under the direction of the commissioners of the District of Columbia that the applicant is a person of good moral character and is qualified to operate such vehicle * * *."[1] Such a license may not be transferred, is highly personal to the applicant, has sometimes been referred to as a "character license," and may be granted only on conditions imposed primarily for the protection of the public. It has been regarded as the law in the District that a patron is entitled to the assurance "that the cab is being driven by a regularly licensed operator, who has secured his license on evidence not only of his qualification to operate the cab but also of his good moral character. Members of the public, including women and children, place themselves in the care and protection of such drivers. For their protection it is the duty of the police and hack inspectors to enforce the statutes and regulations relating to taxicabs." Stewart v. District of Columbia, D.C. Mun.App.1943, 35 A.2d 247, 248.
 
 
 12
 At the hearing pursuant to D.C.Code, § 47-2345 (1951), the Chairman of the Board informed petitioner and his counsel: "So our purpose here is to determine whether or not this man is a proper person to continue to operate a public vehicle and whether or not it is in the interest of the public that he do so. That is our purpose. We are not conducting any trial as by the court. We are an administrative body."[2] Pursuant thereto charges against the petitioner were stated as follows:
 
 
 13
 "It is alleged you are not of proper character to operate a public vehicle for the following reasons: It is alleged that on or about March 1, 1954, at approximately 11:30 P.M., you did have a dangerous weapon [bayonet] in your public vehicle and live ammunition. It is further alleged that on or about December 23, 1953, you did sexually assault and rob a citizen at gun's point."
 
 
 14
 The record disclosed that petitioner was arrested on March 1, 1954 at 11:30 P.M., charged with having committed the crime of rape that same night at about 10 P.M. The accused was acquitted after trial on that charge, not here involved, but prior thereto, as an incident to the arrest in the March 1 case, police searched his taxicab. On the front seat and in the glove compartment were several rounds of live ammunition, .32 caliber bullets. In his home was a .32 caliber revolver which the accused said he used for target practice. In the trunk of his car was a bayonet which he said had been left six months earlier by a passenger. From a police lineup on March 2, 1954, he was identified by a woman as the assailant who, on December 23, 1953, had held her up at pistol point, robbed her of a sum of money and thereafter, raped her. McCamey was indicted then on criminal charges of rape and robbery, and while awaiting the second trial, the proceedings herein considered were commenced.[3] In my judgment, the Board would have been highly derelict in its duty had it not gone forward to ascertain whether any such person was or was not fit to operate a taxicab on the streets of Washington. The Board was right, in my view, in pointing out that McCamey was not on trial before it on any criminal charge but that the hearing, on June 4, 1954, was limited to an inquiry as to his fitness to drive a public vehicle. The coupling of live ammunition found in the cab with the pistol found in his home, the use of a pistol in the robbery and rape, as was testified, the availability of a bayonet in his car, for whatever possible use, were factors to be weighed by the Board in determining his fitness, quite apart from the fact that he had not yet been tried on the robbery and rape charges, Surely the Board was entitled to take the testimony of the complainant in the robbery and rape case, and to weigh it as an element in a "fitness" hearing.[4]
 
 
 15
 If the majority is correct, the facts as to possible criminal conduct cannot be considered in administrative hearings until a criminal trial has been concluded. Presumably the same rule would obtain if a victim of a taxi driver's wanton intoxicated driving commenced a civil action and sought damages. The majority say that such results are commanded because due process is denied if the Board administratively determines to revoke before trial on the criminal charges, but there is no such denial if the Board merely suspends a hacker's license. Some will not understand that to be the law. If a person is a taxicab driver, he takes his license on the full understanding that he is subject to supervision as required by law, and fitness to continue as a privileged licensee is always a possible issue. In my opinion, he acquires through the Fifth Amendment no status of insulation from requirements reasonably designed for the public protection. Surely he is no better off than a gambler who refuses to buy a gambling tax stamp.[5]
 
 
 16
 If the Board acted properly on the evidence before it, the District Court judgment should be reversed. The majority statement that its affirmance "is without prejudice to any future proceedings to revoke the plaintiff's license" imposes upon the Board a burden it has already met. Future proceedings, if any, should be at the instance of McCamey who would then bear the burden of showing that he is indeed a fit and proper person to have a hacker's license. The majority correctly recognizes that "misconduct need not amount to rape in order to show that a man is unfit to operate a taxicab." In my view, that aspect of the case is only one element in the totality of circumstances from which the Board, exercising its own proper function, concluded that McCamey's license should be revoked. On the facts here it had the authority, if not the duty, to revoke and I feel that the courts should be most reluctant to assert their vast power against performance by an administrative body of the duty resting upon it by law. I would reverse on principle and authority.[6]
 
 
 
 Notes:
 
 
 [1]
 Though the hacker's license herein referred to differs from an operator's permit, the various pertinent sections of the Code are not unrelated. D.C.Code §, 40-301(f) (1951) provides "Nothing in this chapter shall relieve any individual from compliance with section 47-2331 (e) of this Code." We have held that action of the Commissioners in suspending an operator's permit was not based upon illegally delegated power. La Forest v. Board of Commissioners, 1937, 67 App.D.C. 396, 92 F.2d 547, certiorari denied, 1937, 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588; cf. generally, Nulter v. State Road Commission, 1937, 119 W.Va. 312, 193 S.E. 549
 
 
 [2]
 Such a Board may so act even after a permittee has been acquitted, as the majority notes. As other examples, see Steele v. State Road Commission, 1935, 116 W.Va. 227, 179 S.E. 810; Commonwealth v. Funk, 1936, 323 Pa. 390, 186 A. 65
 
 
 [3]
 McCamey sought in the District Court a preliminary mandatory injunction to compel the return of his hacker's identification card which was denied. From an order dismissing the complaint he appealed to this court, and we dismissed his appeal on June 23, 1954. On June 24 McCamey commenced the present suit. On June 30 he was acquitted of the charge of rape alleged to have occurred December 23, 1953
 
 
 [4]
 We do not understand why the trial judge said: "The court is of the opinion, as a matter of law, that the Board has no legal power to retry a criminal charge which has been tried in a criminal court and on which the defendant has been found not guilty." The facts were that the Board hearing was held June 4th; the criminal trial was June 30; the injunction ordering return of the license was issued in July
 
 
 [5]
 Cf. Lewis v. United States, 75 S.Ct. 415, 417, where we read: "If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. * * * [Would-be gamblers] may have to give up gambling, but there is no constitutional right to gamble. * * *"
 
 
 [6]
 Poston v. Home Ins. Co., 1939, 191 S.C. 314, 4 S.E.2d 261, 123 A.L.R. 1451; State v. Schauenberg, 1924, 197 Iowa 445, 197 N.W. 295; Lowe v. Lowe, Tex.Civ.App., 1927, 293 S.W. 915; Application of Sheehan, 1943, 182 Misc. 57, 43 N.Y.S.2d 778