### Stephen N. Nzuve v. Castleton State College, Castleton State College Court, and Eileen Jennings

[335 A.2d 321]

No. 2-75

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed February 28, 1975

*Stephen L. Klein, Esq.,* Rutland, for Plaintiff.

*Peter H. Banse, Esq.,* of *Bishop & Crowley,* Rutland, for Defendant.

Larrow, J. In a case of first impression in this state, the plaintiff-appellant, Stephen Nzuve, seeks to enjoin Castleton State College, its College Court, and its Dean for Student Affairs, from holding a hearing before the College Court on charges preferred against him by the Dean. He seeks to enjoin such hearing permanently on the ground that the procedures outlined by the applicable college rules fail to meet the requirements of due process. He also seeks temporary relief on the further ground that such hearing would unduly prejudice the disposition of criminal charges

against him pending in the Rutland Superior Court if held before such disposition.

Admittedly, the charges before the College Court and those before the Rutland Superior Court are substantially the same. In substance, they encompass burglary of a sleeping apartment in the nighttime, attempted rape, and simple assault. College involvement in the charges springs from the fact that they allegedly occurred in a college dormitory at a time when the building was closed to males.

The complaint was dismissed by the Rutland Superior Court, which stayed the dismissal order and enjoined student trial until disposition of the appeal from its order. On motion, we granted speedy hearing, and have elected to dispose of the case by opinion and entry made prior to the customary time, opening of the succeeding term.

■ We hereinafter consider the issues, ably presented by counsel, in what seems to us their logical order. It is both undisputed and certain that the rights of plaintiff here threatened are neither insubstantial nor de minimis. With prior investment in his pursuit of a degree, he stands threatened with expulsion and loss of good name and reputation. This is "loss of liberty" within the purview of the Fourteenth Amendment, and due process of law is required if plaintiff is to sustain such loss. *Goss* v. *Lopez*, 95 S.Ct. 729 (1975) ; *Dixon* v. *Alabama State Board of Education*, 294 F.2d 150 (5th Cir.) *cert. denied*, 368 U.S. 930 (1961). "Once it is determined that due process applies, the question remains what process is due." *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). We have, therefore, examined at length the stipulated procedures of the College Court, which plaintiff voluntarily elected in preference to an alternative hearing before Dean Jennings, to determine whether the protections appropriate to the situation are afforded him. In light of the importance of this question, we elect not to consider the effect of his election as a possible waiver. If due process is not indeed afforded by these procedures, plaintiff would be entitled to both the permanent and the temporary relief which he seeks.

We have also, in light of the importance of this case and the desirability of fair and speedy disposition, elected to relax somewhat the stringency of our rules regarding adequate

briefing. Practically all of the plaintiff's claims with respect to the inadequacy of the procedures afforded are contained in a lengthy affidavit which was attached to his application for temporary relief. These claims are, in his brief, simply incorporated by reference, a course we would ordinarily consider inadequate briefing. We imposed, however, short limitations on briefing preparation for argument, and consider the presentation by both counsel, under existing circumstances, to be impressive. We have therefore considered the merits of these claims, insofar as they are consistent with the unchallenged findings of the trial court.

The first general objection raised by appellant below was that the College Court hearing would be a criminal action, denying him due process. He points to the power to impose a fine, without limitation as to amount. We are cited to no authority holding this makes the action criminal in nature, but in any event, failure to pay an imposed fine results only in "further disciplinary action." The most severe disciplinary action set forth in the procedures is expulsion; it follows that the most severe fine would only be tantamount to expulsion. The procedures are not, in our view, rendered "criminal" by this provision. An alleged lack of right of confrontation and examination is contrary to the findings of the trial court, and we do not, therefore, consider it. The same is true with respect to an alleged deprivation of counsel. Unanimity among the members of the court is not required, but we are pointed to no authority holding this to be a requisite of due process. Trial by court before the three members of our county (now superior) courts has never been held to require such unanimity. The issue of lack of time to prepare a defense was decided adversely to appellant by the trial court, and this finding stands unchallenged, largely because of events transpiring between the original affidavit and hearing on the merits, Absence of "random selection" of court members may well be applicable to jury trial, but certainly has no application to trial without jury. Failure to replace disqualified members after challenge deserves the same comment. The argument of "selective enforcement", based upon the infrequency of preferred charges and failure to pursue the drug convictions of two other stu-

dents we regard as frivolous, particularly when made without citation of authority.

Also asserted in the submitted affidavit was impairment of plaintiff's privilege against self-incrimination. We treat this claim *infra,* in dealing with plaintiff's claim for temporary relief.

In *Goss* v. *Lopez, supra,* the majority opinion makes reference to the Fifth Circuit decision in *Dixon* v. *Alabama State Board of Education, supra,* as a "landmark decision", which indeed it is. Without extensive quotation, *Dixon* enumerates the criteria of due process prior to expulsion from a state college. They are a statement of specific charges and grounds for expulsion under appropriate regulations; a hearing approaching more than an informal interview with administrative authority; an opportunity for both sides to be heard in considerable detail at a hearing best suited to protect the rights of all involved, not necessarily public; the "rudiments" of an adversary proceeding. A full-dress judicial hearing, with right of cross-examination, is not required, but a right to present a defense, by oral testimony or affidavits, is. The "rudimentary elements of fair play" meet general requirements of due process.

All of these elements are contained in the stipulated procedures of the Castleton College Court, found by the trial court. Appellees urge that we not "escalate the formality and adversary nature of the disciplinary process to that akin to criminal prosecution", and in line with what we regard as the current overwhelming weight of authority, we are not inclined so to do. *Goss* v. *Lopez, supra; Esteban* v. *Central Missouri State College,* 415 F.2d 1077 (8th Cir. 1969).

In addition to the *Dixon* requirements enumerated above, we would point out that the trial court found numerous laudable, if not mandated, provisions in the Castleton College Court procedures. At plaintiff's election, he could be tried before the Dean of Academic Affairs or the College Court. From either forum, he could appeal to the Disciplinary Committee and, further, to the College President. On trial, he was entitled to an advisor, who could be legal counsel. He was consulted as to whether he preferred a closed hearing or one open to the college community. He had the right to present evidence and ex-

amine witnesses, to remain silent without prejudice, to hear all testimony, and to challenge all judges except the Chief Judge. The burden of proof rested on the prosecution. Although they were not enumerated, he was advised that his constitutional rights would be respected.

We concur fully with the conclusions of the trial court that the procedures sought to be permanently enjoined by the plaintiff did not violate due process. The permanent injunction was rightly denied.

In affirming the lower court's holding that the requirements of due process are met by the Castleton procedures, we note a unique feature of this case. The plaintiff is not a Vermont citizen or permanent resident, but a national of the Republic of Kenya. He is, therefore, not within the protective ambit of due process for all of the reasons stated in *Goss*. He lacks the "protected interest in property" which accrued to plaintiffs in that decision by virtue of the fact that they "plainly had legitimate claims of entitlement to a public education." *Goss, supra*, 95 S.Ct. at 735. Rather, his protection is afforded because the Due Process Clause also forbids the "arbitrary deprivation of liberty" which results "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Goss, supra*, 95 S.Ct. at 736.

Plaintiff's second claim is more novel, and perhaps more far-reaching. He would enjoin the College Court proceedings temporarily, pending disposition of the criminal charges against him in the Rutland Superior Court. As we have previously noted, the charges in each forum are essentially identical, at least so far as factual allegations are concerned. Substantial prejudice to his criminal defense would result, plaintiff claims, if he is forced to present a defense to the college charges. Two areas of possible prejudice are briefed, a compelled election as to whether or not to testify at the college hearing, and the enhancement of the possibility of mistaken identification by witnesses. Electing to testify would, he claims, result in statements usable against him in the criminal trial and prematurely disclose his defenses. And being pointed out by the witnesses at the college trial would "bolster their identification testimony."

Appellant agrees that the remedy he seeks would carry civil rights protection beyond the scope of virtually all decided cases. He relies heavily upon *Silver* v. *McCamey,* 221 F.2d 873 (D.C. Cir. 1955), holding in substance that, because of the probable results he here alleges, a taxi licensing board erred in revoking a cabdriver's license, after hearing but before criminal trial, on rape and other charges. Appellees would distinguish the case, on the ground that the interest sought to be protected, *i.e.,* a right to pursue a licensed avocation, was greater, and that the governmental activity involved was regulatory, rather than proprietary. These distinctions are to some degree, at least, valid. But essentially *Silver,* in its reasoning, supports appellant's position that advance disclosure of his defenses may result in prejudice to his criminal trial, and that his due process rights were violated by the prior hearing.

We are not, however, persuaded by this line of reasoning. An acknowledged leading case on the subject matter, *Goldberg* v. *Regents of University of California,* 248 Cal.App.2d 867, 57 Cal. Rptr. 463 (1967), squarely holds that discipline imposed by the academic community need not await the outcome of other proceedings. We conceive that holding to be more in line with our own ideals of fairness and the balancing of all interests involved. Educational institutions have both a need and a right to formulate their own standards and to enforce them; such enforcement is only coincidentally related to criminal charges and the defense against them. To hold otherwise would, in our view, lead logically to the conclusion that civil remedies must, as a matter of law, wait for determination until related criminal charges are disposed of. By parallel, the owner of stolen property could not obtain damages or its recovery until criminal prosecution had been completed. Similarly, in the instant case, the complaining witness could not have redress for the assault on her, if proven, until the pending criminal charges had run their long course of trial and appeal. Nor would it be at all unusual for the temporary relief here sought to enable the plaintiff to complete his education, thus effectively completing an "end run" around the disciplinary rules and procedures of the college.

■ We are unwilling to reach such a result. We do not view such a holding as compelled by due process requirements or equitable principles generally. The argument that *Goldberg* involved lesser criminal offenses and should not therefore apply we regard as self-defeating. It only argues that the chance of escape from discipline should be greater when the offense is greater.

Nor do we regard the consequences of our holding as having the severity of impact which the plaintiff claims. The election to speak or remain silent is not confined to the college court proceedings. It is the same election that the plaintiff must make when, after appropriate warning, he is questioned by police or other enforcement officials. And the same results ensue; his silence may not be used against him, while his statements, if contradictory or incriminating, may. It is also the same choice he would be compelled to make if deposed in a related civil action.

Substantially the same considerations were before the court in *Furutani* v. *Ewigleben,* 297 F.Supp. 1163 (N.D. Cal. 1969). In just about the same factual setting as here, plaintiffs relied on *Garrity* v. *New Jersey,* 385 U.S. 493 (1967). In *Garrity,* police officers who testified at a state investigation into the fixing of traffic tickets had been told they would be removed from office if they did not testify. The testimony they gave was later introduced into evidence against them in a criminal proceeding, and the U.S. Supreme Court reversed their convictions, holding the statements to have been inadmissible because obtained under compulsion in violation of the Fifth Amendment. The *Furutani* court held that *Garrity* did not justify enjoining student court proceedings, because if any statements made were under compulsion, they would be excludable at the criminal trial, under the *Garrity* holding. We concur fully with this line of reasoning. Further, the unchallenged findings of the trial court, based on stipulated college court procedures, are that upon student trial Nzuve is permitted to remain silent, without his silence being used against him. His testimony, if given, at the college student trial could be only the result of his voluntary election, under which circumstances the Fifth Amendment would not apply. Like any voluntary statement given with knowledge of rights, it would

be admissible in the criminal trial; if not voluntary, or given without such knowledge, it would be excludable under *Garrity*. No injunctive process to protect any rights of the plaintiff here would appear to be required.

The argument that testimony of identifying witnesses might be "bolstered" by the college proceedings we regard as even weaker. Apart from its highly speculative nature, it assumes that the trial court in the criminal case would fail to follow the well-defined rules relating to admissible identifications, to the prejudice of appellant. We are unwilling to leap to this assumption or to conclude that any prejudice was beyond appellate remedy. Moreover, by terms of his bail, plaintiff is present daily on the college campus; it is difficult to perceive how seeing him at a disciplinary hearing would "bolster" identification any more than seeing him engaged in scholastic pursuits.

Adverse public sentiment, if any, whether fostered by the student trial or through any other publicity, can be countered by appropriate change of venue, seasonably requested. Again, we cannot presume that the criminal trial court will exceed the bounds of its discretion in this respect.

In affirming the trial court, as we feel we must, it seems appropriate to delineate the scope of our holding. Plaintiff has not made out, as a matter of law, his entitlement to the temporary relief he seeks. We do not require the College Court to proceed forthwith; it still remains within its discretion whether it desires so to do. Nor do we hold that a trial court may not, as a matter of discretion appropriately exercised, defer trial of a civil action pending disposition of a related criminal case. Our holding on this point, simply put, is that in the instant case the required showing for mandatory relief was not made.

*The judgment order dismissing plaintiff's petition is affirmed. The order of stay under V.R.A.P. 8, and enjoining hearing before the College Court pending appeal is vacated. To be certified forthwith.*