## Oznemoc, Inc. *vs.* Alcoholic Beverages Control Commission.

Suffolk. December 3, 1991. - March 2, 1992.

Present: Liacos, C.J., Wilkins, Abrams, & Greaney, JJ.

*Alcoholic Liquors*, Alcoholic Beverages Control Commission, License, Revocation of license, Price. *Constitutional Law*, Self-incrimination. *Due Process of Law*, Revocation of license, Administrative hearing, Failure to postpone proceeding. *Evidence*, Administrative hearing. *Practice, Civil*, Appeal. *Supreme Judicial Court*, Superintendence of inferior courts. *Words*, "Substantial evidence."

An establishment with a license for the sale of alcoholic beverages had no standing to argue that the failure of the Alcoholic Beverages Control Commission to postpone its hearings on whether to suspend the establishment's license, while a criminal assault charge was pending against an employee of the establishment who had assaulted a customer, violated the employee's rights under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. [104]

In a license suspension proceeding before the Alcoholic Beverages Control Commission arising from an incident in which an employee of the licensee assaulted a customer, the commission's failure to postpone its hearings until after the conclusion of the employee's criminal trial did not violate the licensee's right to due process of law under the Fourteenth Amendment to the United States Constitution, where there was no evidence in the record to support the licensee's contention that it could not go forward in the administrative proceedings prior to the conclusion of the criminal case and where, even if there were such record support, this court would decline to adopt a rule that would require administrative agencies to delay hearings until the conclusion of any related criminal action against a witness. [104-106]

At a hearing before the Alcoholic Beverages Control Commission, the commission's determination that the licensee charged different prices for the same alcoholic beverage on the same day was supported by substantial evidence. [106-108]

Where, in a license suspension proceeding before the Alcoholic Beverages Control Commission, the licensee raised a colorable constitutional claim that it was entitled to a continuance of the administrative proceedings

until after completion of a related criminal case, a stay of the enforcement of the license suspension pending resolution of the licensee's appeal was properly obtained in this court pursuant to G. L. c. 211, § 3. [108-109]

CIVIL ACTION commenced in the Superior Court Department on September 20, 1989.

The case was heard by *Barbara A. Dortch*, J.

The Supreme Judicial Court granted a request for direct appellate review.

PETITION for a stay pending appeal filed in the Supreme Judicial Court for the county of Suffolk on May 14, 1991.

The case was heard by *Nolan*, J.

*Jon Laramore*, Assistant Attorney General, for the defendant.

*David R. Kerrigan* (*Morris M. Goldings* with him) for the plaintiff.

ABRAMS, J. The first of these two appeals results from a Superior Court judge's ruling affirming a decision of the Alcoholic Beverages Control Commission (commission). After hearing, the commission suspended for ninety-five days the liquor license of the plaintiff, Oznemoc, Inc. (Oznemoc). On appeal, Oznemoc contends that one portion of the suspension violates both the Federal and Massachusetts Constitutions and that another portion of the suspension is unlawful because it is not supported by substantial evidence. The second appeal is by the commission from a decision of a single justice of this court staying the enforcement of the suspension pending the resolution of Oznemoc's appeal.[1] We conclude that there is no merit in either appeal. We therefore affirm the judgment of the Superior Court and vacate the stay.

*Prior proceedings.* The licensing board of Boston (board) held hearings in this matter on May 9, 1989. The board

---

[1]The licensing board of Boston (board) began to enforce the ninety-five day suspension on May 1, 1991. By the time the petition for stay was granted, Oznemoc had served twenty-two days of the suspension. Seventy-three days of the suspension remain to be served.

heard six charges against Oznemoc, doing business as "The Naked I Lounge," for violations of the liquor licensing law. After hearing, the board concluded that Oznemoc had violated the liquor laws on six occasions and voted to revoke Oznemoc's liquor license.[2]

Oznemoc appealed the board's decision to the commission, which held hearings on June 29 and August 3, 1989.[3] The commission approved all but one of the board's determinations. The commission, however, reversed the revocation order and reduced the suspension period to ninety-five days.[4]

Oznemoc sought judicial review of the commission's decision. Oznemoc asked the Superior Court to reverse the com-

---

[2]The board imposed a one-month suspension for three violations that took place on August 31, 1988. On that date, the board found, Oznemoc allowed an employee to solicit drinks in violation of rule 1.11g of the rules of the board, charged different prices for the same alcoholic beverage on the same day, and gave employees commissions from the sale of alcohol. The board also ordered a two-month suspension for an incident on November 3, 1988, in which an employee assaulted a patron. The board suspended Oznemoc's license for three months for a second violation of rule 1.11g, which took place on November 29, 1988. Finally, the board ordered the revocation as a penalty for a February 11, 1989, incident in which an employee assaulted a patron.

[3]The commission's review encompassed not only the six violations discussed above, see note 2, *supra*, but also a separate determination of the board that on May 3, 1988, Oznemoc committed a rule 1.11g solicitation violation. The board had imposed a five-day license suspension for the May 3, 1988, violation. This suspension was one of the suspensions upheld by the commission. See note 4, *infra.*

[4]The commission approved the five-day suspension for the May 3, 1988, rule 1.11g violation and the two-month suspension for the November 3, 1988, assault. The commission also approved the board's determinations as to the August 31, 1988, rule 1.11g violation and the price violation on the same date. The commission, however, reduced the suspension period to ten days for each violation. The commission also determined that giving commissions to employees does not violate the law and so disapproved the board's determination on that alleged infraction. The commission also approved the board's determination of a November 29, 1988, rule 1.11g solicitation violation, but reduced the suspension for that violation to ten days. Finally, the commission approved the determination of a second employee assault on a patron on February 11, 1989, but did not uphold the board-ordered license revocation. The suspensions ordered by the commission totaled ninety-five days.

mission's decision and also requested a stay of the imposition of the penalties during the pendency of the appeal in the Superior Court. The request for a stay was allowed. After hearing, a Superior Court judge affirmed the commission's decision, and Oznemoc appealed.[5]

Oznemoc unsuccessfully sought continuation of the stay pending appeal. Oznemoc then sought a stay pending appeal from a single justice of the Appeals Court, who denied the stay. Pursuant to G. L. c. 211, § 3 (1990 ed.), Oznemoc filed a request for a stay in the county court. After hearing, a single justice of this court allowed the stay. See note 1, *supra*. The commission appealed from that decision. The two appeals have been consolidated. We granted the commission's application for direct appellate review. We affirm both the judgment of the Superior Court and the single justice's decision to stay the suspensions pending appeal.

*The two-month suspension.* The commission approved a two-month suspension of Oznemoc's license for an incident on November 3, 1988, in which an employee of "The Naked I Lounge" assaulted a customer. On appeal, Oznemoc raises two claims. First, Oznemoc contends that the commission's decision to proceed with the licensing hearings, while a criminal assault charge arising out of the November 3 incident was pending against its employee, violated the employee's rights under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Second, Oznemoc maintains that by proceeding with the hearings before the conclusion of the criminal case, the board and the commission violated Oznemoc's right to due process of law under the Fourteenth Amendment to the

---

[5]On appeal, Oznemoc contests only two of the suspensions: the two-month suspension issued for the November 3, 1988, assault and the ten-day suspension for charging different prices for drinks on the same date. Because the total period of suspension contested by Oznemoc is seventy days and because Oznemoc has already served twenty-two days of the ninety-five day suspension, only three noncontested days remain to be served.

United States Constitution. We do not reach the first conten-
tion; we reject the second.

1. *The Fifth Amendment and art. 12 claims.* Oznemoc ar-
gues that the commission's failure to postpone its hearings
until after the conclusion of the employee's criminal trial vio-
lates the employee's Fifth Amendment and art. 12 rights.
Oznemoc has no standing to assert the Fifth Amendment or
art. 12 rights of its employee. See *Commonwealth* v. *Simp-
son*, 370 Mass. 119, 121 (1976). "The privilege against self-
incrimination . . . is personal to the witness" and not assert-
able by others. *Goldstein* v. *United States*, 316 U.S. 114, 121
n.11 (1942). *Commonwealth* v. *Shaw*, 4 Cush. 594, 595
(1849).

2. *The due process claim.* Oznemoc maintains that it was
prevented from mounting a "full and fair defense" by the
commission's refusal to postpone its proceedings until after
the conclusion of the criminal action against Oznemoc's em-
ployee. Oznemoc contends that the only witness who could
rebut the assault charges, its employee, would not testify be-
cause of the pendency of a criminal action against him. Post-
poning the hearing until the conclusion of the criminal case,
Oznemoc contends, could have prevented this alleged unfair-
ness. The commission's failure to continue its proceedings,
Oznemoc alleges, violated its right to due process of law
under the Fourteenth Amendment.

As an initial matter, we note that Oznemoc has failed to
demonstrate that its employee would have invoked the privi-
lege had he been called to testify before the commission.[6]
Moreover, Oznemoc asserts, without any support in the rec-
ord, that its employee's testimony would have rebutted the

---

[6]Oznemoc's employee was present at neither the board's nor the com-
mission's hearings. The commission was informed by counsel for Oznemoc
that the employee would invoke his Fifth Amendment privilege were he
called to testify. The law is well settled that the privilege against self-
incrimination is personal and may not be asserted by others. *Goldstein* v.
*United States*, 316 U.S. 114, 121 n.11 (1942). *Commonwealth* v. *Simp-
son*, 370 Mass. 119, 121 (1976). Cf. *Anglada* v. *Sprague*, 822 F.2d 1035
(11th Cir. 1987) (in order to invoke Fifth Amendment privilege, witness
must take stand and assert privilege as to specific questions).

charges against it. Nor does the record support Oznemoc's contentions that only its employee's testimony would have aided its defense and that there were no other witnesses, such as customers, it could use in its defense. There is, therefore, no evidence on this record to support Oznemoc's contention that it could not go forward in the administrative proceedings prior to the conclusion of the criminal case.

Even if there were such record support, we would decline to adopt a rule that would require administrative agencies to delay hearings until the conclusion of any related criminal action against a witness. "It would stultify enforcement of [State licensing] law to require a governmental agency such as the [commission] invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." *United States* v. *Kordel*, 397 U.S. 1, 11 (1970). The United States Supreme Court held in *Kordel, supra*, that due process does not require an administrative agency automatically to postpone civil proceedings against a corporation where related criminal actions are pending against corporate officers.[7] We also reject an automatic rule.

Oznemoc's due process argument, such as it is, rests on the contention "that the threat of subsequent criminal proceedings unfairly force[d] [its employee] to remain silent and thus constitute[d] an unconstitutional restriction on the evidence the [commission] accept[ed]" (citation omitted). *Arthurs* v. *Stern*, 560 F.2d 477, 479 n.4 (1st Cir. 1977), cert. denied, 434 U.S. 1034 (1978). Courts generally reject claims by parties to administrative proceedings that they are entitled to continuances until after their criminal trials because they will not testify for fear of self-incrimination. Cf. *Wansong* v. *Wansong*, 395 Mass. 154, 157 (1985). *Peiffer* v. *Lebanon School Dist.*, 848 F.2d 44, 46 (3d Cir. 1988), and cases

---

[7]*United States* v. *Kordel*, 397 U.S. 1 (1970), involved an in rem civil proceeding for seizure of two of a corporation's products. The civil action, in effect, was against the corporation, and the distinction is of no significance here.

cited. *Hoover* v. *Knight*, 678 F.2d 578, 581 (5th Cir. 1982). *Arthurs* v. *Stern, supra. Flint* v. *Mullen*, 499 F.2d 100, 104 (1st Cir. 1974). There is no reason not to follow the general rule in a case such as this, where the party to an administrative proceeding is not involved in any way in the related criminal case.[8]

In reviewing an agency's decision not to continue administrative proceedings against a party while a related criminal case is pending against that party, a judge must "balance any prejudice to the other civil litigants which might result [from delaying the administrative proceedings] against the potential harm to the party claiming the privilege if he is compelled to choose between defending the civil action and protecting himself from criminal prosecution" (citations omitted). *Wansong* v. *Wansong*, 395 Mass. 154, 157 (1985). *Arthurs* v. *Stern, supra* at 477. Cf. *United States* v. *Kordel, supra* at 8-10.

Assuming, without deciding, that the present case required the judge to weigh the public's interest in enforcing the liquor licensing laws against the prejudice to Oznemoc resulting from the commission's decision to proceed, there was no error. The threat to the public from Oznemoc's repeated violations of the liquor licensing law more than justified the commission in proceeding with its hearings.

*The ten-day suspension.* We reject Oznemoc's contention that the commission's determination that Oznemoc charged different prices for the same alcoholic beverage on the same day is not supported by substantial evidence. We review the

---

[8]Oznemoc relies on *Silver* v. *McCamey*, 221 F.2d 873, 874 (D.C. Cir. 1955). That reliance is misplaced. In *Silver*, the court held that subjecting a cab driver, charged with rape, to an administrative hearing before his trial violated his due process rights in that "[h]is necessary defense in the administrative hearing may disclose his evidence long in advance of his criminal trial and prejudice his defense in that trial." *Id.* at 875. The due process rights at issue in *Silver* were those of the party claiming the privilege. The result in *Silver* was based on the abrogation of the defendant's rights in his criminal action. In the present case, Oznemoc neither faces a criminal action nor has any ground to assert the privilege. The rationale of *Silver* is therefore entirely inapplicable to the instant case.

commission's decision to determine whether it is supported by substantial evidence. G. L. c. 30A, § 14 (7) (*e*) (1990 ed.). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1990 ed.). See *Embers of Salisbury, Inc.* v. *Alcoholic` Beverages Control Comm'n,* 401 Mass. 526, 528 (1988).

A police officer testified that, on September 3, 1988, he went to "The Naked I Lounge" and asked for a price list. Although the issue was contested, the commission could have found that the individual who gave the price list to the police officer was the lounge's day manager. The price list plainly shows "day" and "nite" prices for the same alcoholic beverages. Oznemoc does not dispute that the police officer went to "The Naked I Lounge," and it does not dispute that the price list reflected different daytime and nighttime prices.

On appeal, Oznemoc advances two arguments. First, it contends that there is no evidence that the prices on the price list, issued by an unidentified individual on the premises, were ever actually charged. The commission, however, was entitled to credit the evidence' that tended to show that two different prices were charged on the same day. See *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 529. An administrative body's decision will stand if it "*could* have been made by reference to the logic of experience" (emphasis in original). *Alsabti* v. *Board of Registration in Medicine,* 404 Mass. 547, 549 (1989), quoting *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981). In common experience, an establishment's price list is substantial evidence of the prices it charges.

Second, Oznemoc contends that the price list was not authorized by Oznemoc or its officials. Indeed, Oznemoc notes, the owner of "The Naked I Lounge" testified that the price lists given to the police were not the correct price lists. Whether the prices were authorized, however, is not relevant. Oznemoc cannot disclaim responsibility for different prices charged on its premises, even if such prices were not author-

ized. See *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n*, 372 Mass. 152, 154 (1977).

*The authority of the single justice.* A single justice of the Supreme Judicial Court for the county of Suffolk allowed a stay pending appeal pursuant to G. L. c. 211, § 3. "Decisions of a single justice will not be disturbed on appeal absent clear error of law or abuse of discretion." *Fogarty* v. *Commonwealth*, 406 Mass. 103, 106 (1989), citing *Palaza* v. *Superior Court*, 393 Mass. 1001, 1002 (1984), and *Schipani* v. *Commonwealth*, 382 Mass. 685 (1980). There was no error.

In order to invoke our power under G. L. c. 211, § 3, a party "must 'demonstrate both a substantial claim of violation of . . . substantive rights and error that cannot be remedied under the ordinary review process.' " *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986). *Fogarty* v. *Commonwealth*, *supra* at 106-107. *Parents of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't*, 397 Mass. 846, 849 (1986). The commission argues that Oznemoc neither demonstrated a violation of its substantive rights nor established that relief was unavailable through the normal process of appellate review. We do not agree.

Oznemoc raised a colorable constitutional claim that it was entitled to a continuance of the administrative proceedings until after the completion of the criminal case.[9] Although Oznemoc might have appealed the denial of a stay by the single justice of the Appeals Court to a full panel of that court, the single justice of the county court could have concluded that, in view of the short period of suspension, there

---

[9]Even in cases in which G. L. c. 112, § 64 (1990 ed.), prohibits a reviewing court from allowing a stay pending appeal, we have said that "we would be reluctant to conclude that a single justice may not issue a temporary stay when the petitioner raises a substantial procedural due process claim in which the prerequisites for issuing equitable relief are otherwise present." *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 130 (1985). The provisions of G. L. c. 122, § 64, do not apply to this case.

was no effective appellate remedy available to Oznemoc except to issue a stay under G. L. c. 211, § 3.[10]

Having taken the matter pursuant to G. L. c. 211, § 3, the single justice had the power to "issue all writs and processes . . . necessary to the furtherance of justice and to the regular execution of the laws." The scope of review is thus broad, not narrow. When reviewing the denial of a stay, a judge generally is limited to reviewing for errors of law or abuse of discretion. *MacNeil Bros. Co.* v. *State Realty Co.*, 341 Mass. 725 (1960). *Mezoff* v. *Cudnohufsky*, 5 Mass. App. Ct. 874 (1977). The plenary power invested in the court by G. L. c. 211, § 3, dictates that the scope of review under the statute be broad. The commission's view that, under G. L. c. 211, § 3, the single justice was limited to reviewing the exercise of discretion by the single justice of the Appeals Court is incorrect.

We affirm the judgment of the Superior Court judge upholding the commission's decision and vacate the stay pending appeal.

*Judgment affirmed.*

---

[10]Indeed, in the context of criminal appeals, we have said that the refusal to grant a stay of execution could make the right of appeal "nugatory in the case of a short sentence." *Commonwealth* v. *Hodge (No. 1)*, 380 Mass. 851, 856 (1980), quoting *Commonwealth* v. *Levin*, 7 Mass. App. Ct. 501, 512-513 (1979). As in the criminal context, the decision to grant a stay from an administrative order is committed to the discretion of the judge. *Hodge (No. 1)*, *supra* at 854, citing G. L. c. 279, § 4. Fairness dictates that the judge consider the length of the administrative penalty in deciding whether to issue a stay. See *Hodge (No. 1)*, *supra* at 855-856.