Fabricant, J.
INTRODUCTION
The plaintiff, Joseph Clark, is in the custody of the Massachusetts Department of Correction (the Department) at the Massachusetts Correctional Institution at Cedar Junction (MCI-Cedar Junction). Clark has brought this action in the nature of certiorari under G.L.c. 249, §4, seeking review of a disciplinary decision in which the Department determined that he had assaulted two correction officers with a razor-like weapon. The Department imposed a sanction of ten years confinement in the Department Disciplinary Unit (DDU) and the loss of 700 days of good time credits. Clark claims that he was denied due process in the disciplinary proceeding, in that he was denied the right to call witnesses in his defense, he was denied the production of physical evidence, and his right to remain silent, as guaranteed by the fifth amendment to the U.S. Constitution, was violated.
The Defendants’ Motion to Dismiss or, Alternatively, for Summary Judgment, is presently before the Court. For the reasons stated below, the defendants’ motion will be treated as one for judgment on the *385 pleadings, see Gloucester v. Civil Service Com'n, 408 Mass. 292, 297 (1990); Superior Court Standing Order 1-96 (1996), and as such will be ALLOWED.
BACKGROUND
The Department’s Special Hearing Officer (SHO) found the following facts, based on evidence presented at the disciplinary hearing. On July 24, 1997, Correction Officer Brian Ladoucer went to Clark’s cell to conduct a strip search of the plaintiff as part of a “major shakedown.” When Clark refused, Officer Ladoucer informed Correction Officer Jeffrey Grimes of the refusal. Upon Officer Grimes’ entrance into the cell, Clark assaulted the correction officers with a razor-like weapon. Officer Grimes received several slice wounds to his ears, neck, face and head, requiring 55 sutures. Officer Brian Ladoucer received two slice wounds to his left elbow. Other correction officers were called upon to restrain Clark.
As a result of this incident, on September 9, 1997, the Department issued disciplinary report no. 97-2079, charging Clark with violations of Departmental regulations.[3] On the same date, the Department served the plaintiff with notice of a disciplinary hearing. This notice included a copy of the disciplinary report and notification that the plaintiff could request witnesses and evidence, and be represented by counsel. The Department also referred the matter to the Norfolk County District Attorney’s office, and the Norfolk County Grand Jury has indicted the plaintiff on seven criminal offenses.[4]
After the Department served him with these documents, the plaintiff submitted a Request For Representation And/Or Witnesses form, requesting that two witnesses, inmates James Bing and Sean Thomas, be present at the hearing. The plaintiff also submitted a Request For Evidence Form, seeking:
All written statement [sic] by each and every staff member concerning this matter. Any and all video tape if any concerning this matter. Any and all photograph(s) which were taken regarding this matter. Any and all medical records produced by any staff member(s) which directly deals with this matter ... a razor which is being discribed [sic] in your D.D.U. complaint . . . and report(s) of any and all test(s) done on razor.
On the Evidence Produced to Inmate Form, signed by Disciplinary Officer Ernest J. Therien and dated October 15, 1997, the Department granted all but three of the plaintiffs requests for production of evidence. The Department produced an “investigative wrap-up, interviews with Officers Grimes, Ladoucer, Rodriquez, and Mello, an interview with inmate Clark, medical reports regarding Clark and Officers Grimes, Ladoucer, and Bolton, and twelve Use of Force reports. Denied on the same form were the plaintiffs request for a videotape of the incident on the ground that no videotape existed, his request for photographs on the ground that they were to be ’’presented at the hearing," and his request for the weapon used in the incident and reports of any tests done on the weapon, noting that this denial was “[t]o be addressed at the hearing.”
The disciplinary hearing took place on October 17, 1997, before SHO Pamm MacEachern. It had been set for an earlier date, but the Department granted Clark a continuance in order to secure counsel. The SHO granted Clark’s request that Sean Thomas be present as a witness, but denied his request that James Bing be present as a witness on the ground that, according to the statement of expected testimony submitted by Clark, Bing’s testimony would be repetitive of Thomas’s. Clark objected to this determination at the hearing. Sean Thomas did not provide testimony at the hearing, as Clark declined to call for his testimony and waived his presence. The SHO advised the plaintiff at the hearing of his “right to remain silent, since the offense charged has, or may be referred to the District Attorney,” and also that “his silence may be used to draw an adverse inference against him, but his silence alone may not be used to support a guilty finding.”
Inner Perimeter Security Commander Lt. Nelson W. Julius, the investigating Correction Officer, gave the Department’s only testimony. Lt. Julius’s investigation of the incident consisted of his own eyewitness testimony, his interviews with staff members, and his observations in processing the crime scene. He testified that he responded to an alarm and was informed that there had been an assault on staff members with a weapon. He observed that Officer Grimes was bleeding and that Officer Ladouceur had blood on him. He observed Clark in restraints and saw blood on the walls and floor of his cell, no. 202. He testified that he observed a razor-type weapon. He said that Officer Grimes was severely injured and was sent to the hospital. He noted that Grimes’ wounds required 55 sutures. He interviewed staff and attempted to interview Clark about the incident. He expressed his conclusions that Clark refused Officer Ladoucer’s request that he exit his cell and be strip searched, that when Officer Grimes went into Clark’s cell to speak with him, Clark “jumped out of his bed and assaulted CO Grimes with the razor type weapon,” and that Officers Grimes and Ladoucer tried to restrain Clark and he struggled violently against them.
At the hearing, the SHO accepted into evidence the following documents and photographs: one “wrap-up” memo written by Lt. Julius; five interview memos written by Lt. Julius; four Health Service Unit Reports concerning Clark and Officers Grimes, Ladoucer and Bolton; twelve Use of Force Reports written by Correction Officers; six pictures of cell no. 202 “showing blood on floor”; and four pictures of the weapon, a “razor type constructed out of a plastic razor handle, razor melted into handle.”
Clark gave no statement in his defense, but lodged a number of objections on the record, including objec *386 tions to the denial of certain requested witnesses and to the victim not being present at the hearing. The SHO denied these objections on the ground that before the hearing Clark had requested that only two witnesses be present, the victim, Officer Grimes, not being one of them. She noted that “arrangements were made to have inmate Thomas present to testify, however, inmate Clark stated that he did not want him there and waived his presence.” Clark objected to the denial of his “Request for a continuance to obtain legal representation/Request for a continuance until such time as any court proceedings are completed.” The SHO denied this objection because Clark had already received a continuance to obtain counsel and did not do so, and because “. . . any court proceedings against inmate Clark have no bearing on this administrative hearing.” Clark also objected to the actual weapon not being present and to the introduction of photos of the weapon at the hearing. The SHO denied these objections because the weapon was still being tested at the State Police Crime Lab and because she determined that photos of the weapon would be acceptable for the purpose of the hearing.
At the conclusion of the proceedings, the SHO found that, “inmate Clark’s guilt in charges (15), (16/33), (18), and (32) is undeniably established by a preponderance of the evidence. This decision is based on the evidence and testimony presented at this hearing . . .” The SHO dismissed charges (1), (2), (8) and (19) as duplicative. She recommended sanctions of 10 years confinement in the DDU and a loss of 700 days of good time credits.
On October 21, 1997, the Department served the plaintiff with a copy of the SHO’s decision, including her rulings on his objections, a description of the evidence relied on, and a statement of the reasons for the sanctions recommended. Along with the decision, the Department served Clark with notice of his right to appeal the SHO’s decision to the Deputy Commissioner of Correction. The plaintiff exercised that right. On November 13, 1997, Deputy Commissioner Kathleen M. Dennehy denied his appeal and approved the findings and recommendation of the SHO. Clark filed this action for review of that decision on December 22, 1997.
DISCUSSION
The proper vehicle under state law for a prisoner to challenge the validity of a prison disciplinary proceeding is an action in the nature of certiorari under G.L.c. 249, §4. See Hill v. Superintendent, Mass. Correctional Inst., Walpole, 392 Mass. 198, 199 nn. 2&3 (1984), rev’d on other grounds, 472 U.S. 445 (1985); Ford v. Commissioner of Correction, 27 Mass.App.Ct. 1127, 1129 (1989). Since review in a certiorari action is “Confined to the record and is for the purpose of correcting legal error . .. [this court] need only inquire whether the [disciplinary board’s] decision was legally tenable and supported by substantial evidence on the record as a whole.” Gloucester, 408 Mass. at 297 (internal quotes omitted). The purpose of the certiorari statute is “to correct errors of law apparent on the record adversely affecting material rights.” Sullivan v. Committee on Rules of the House of Representatives, 331 Mass. 135, 139 (1954).
The plaintiff claims that the Department denied him the chance to call witnesses, that his fifth amendment right to silence was violated, and that he was denied access to documents and physical evidence, all in violation of due process. The Department maintains that the proceedings afforded the plaintiff all the process that was due him. The record shows that the requirements of due process were satisfied. Therefore, the certiorari petition must be denied.
I. Denial of Witnesses
The plaintiff claims that the Department denied him the right to call witnesses, in violation of due process. An inmate must submit the names of his/her witnesses to the Department or, in the discretion of the hearing officer, his/her right to call witnesses is considered waived. 103 Code Mass. Regs. §430.11(5).[5] On his Request For Representation And/Or Witnesses form, Clark listed inmates James Bing and Sean Thomas as the only witnesses he wished to call at the hearing.[6] The Request For Representation And/Or Witnesses form asks that the inmate provide a brief statement of the witnesses’ expected testimony. Clark wrote that Bing “will state that he was in view when the officers rushed in on me and attacked me," and that Thomas “was also in view and can give his testimony on seeing a few officers attacked me.” The plaintiffs request to have inmate James Bing present as a witness was lawfully denied, as the SHO reasonably determined, in her discretion, that Bing’s testimony would be repetitive of what inmate Sean Thomas would be presenting. See 103 Code Mass. Regs. §430.14(4).[7] Sean Thomas did not testify on Clark’s behalf because, the record shows, "arrangements were made to have inmate Thomas present to testify, however, inmate Clark stated that he did not want him there and waived his presence.”
II. Denial of Evidence
The plaintiff claims that the Department denied certain requests for documents and physical evidence in violation of his rights to due process. Department regulation requires that all evidence considered by the hearing officer be presented in the presence of the inmate except informant information. 103 Code Mass. Regs. §430.14(2). Clark claims that the Department denied his request for “all medical report[sic] on allege [sic] victim including E.M.T. reports, hospital reports.” On his Request for Evidence Form, Clark requested “any and all medical records produced by any staff member(s) which directly deals with this matter.” The Evidence Produced to Inmate Form shows that the Department provided Clark with Department medical reports regarding himself and Officers Grimes, *387 Ladoucer, and Bolton. These four Health Service Unit reports were the only medical reports produced by staff members of MCI-Cedar Junction, as well as the only medical reports accepted into evidence at the disciplinary hearing. Therefore, all medical reports produced by staff were provided to Clark, and his request was fully respected.
The plaintiff claims that the Department denied his request for “photos taken of the allege[sic] victim.” On his Request for Evidence Form, Clark requested “any and all photograph(s) which were taken regarding this matter.” The Evidence Produced to Inmate Form notes that the Department denied this request because the photographs were to be presented at the hearing. At the hearing, six pictures of cell no. 202 “showing blood on floor”; and four pictures of the weapon, a “razor type constructed out of a plastic razor handle, razor melted into handle” were accepted into evidence. No photos of the victim were considered by the SHO, or shown to exist. Therefore this claim has no merit.
Clark also claims that the Department denied his request for “the allege[sic] weapon involved to be present” at the hearing. On his Request for Evidence Form, Clark requested “a razor . . . and reports(s) of any and all test(s) done on razor.” The Evidence Produced to Inmate Form shows that the Department denied this request for reasons “to be addressed at the hearing.” At the hearing, the SHO denied Clark’s objection “to the actual weapon not being present at the hearing/to the photos being introduced at the hearing as he says the weapon is not his and he has no recollection of it,” because she “determined that the weapon was still with the State Police Crime Lab where tests were being completed.” She went on to remark that “Lt. Julius noted that he had photos of the weapon and this SHO has determined that for the purpose of this administrative hearing, photos would be acceptable.” The SHO’s ruling, based on the practicalities of the situation, was within her discretion under 103 Code Mass. Regs. §430.14(4).
Finally, Clark claims that the Department denied his request for “any video of the allege(sic) scene (or) the crime scene." This request was denied because no such videotape exists. Therefore, this claim has no merit.
III. Fifth Amendment Violation
The plaintiff claims that the Department violated his fifth amendment right to silence by declining to postpone the disciplinary proceeding until after the conclusion of his criminal case. Courts have rejected analogous claims by parties to other types of administrative proceedings. E.g. Oznemoc, Inc. v. Alcoholic Beverages Control Com’n, 412 Mass. 100, 105 (1992). By regulation, 103 Code Mass. Regs. §430.14(1), the Department permits a disciplinary hearing to proceed if a case has been referred for criminal prosecution, requiring in such circumstances that “the hearing officer shall advise the inmate that he has the right to remain silent and that anything he says during the hearing may be used against him in a court of law.” Department regulation further provides that “An inmate’s silence may be used to draw an adverse inference against him, but his silence shall not be the sole basis for a guilty finding." 103 Code Mass. Regs. §430.14(3); see also McClellan v. Acting Superintendent, MCI-Cedar Junction, 29 Mass.App.Ct. 122, 124, n.4 (1990). The plaintiff was warned at the hearing that he had the “right to remain silent, since the offense charged has, or may be referred to the District Attorney,” and also that “his silence may be used to draw an adverse inference against him, but his silence alone may not be used to support a guilty finding.” As Oznemoc, supra, establishes, the Constitution requires no more.
The Supreme Judicial Court has held that disciplinary proceedings in correctional facilities are sufficient if they include: “(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present evidence in his defense; (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary actions.” O’Malley v. Sheriff of Worcester County, 415 Mass. 132, 138 (1993) quoting Superintendent, Mass. Correctional Inst, at Walpole v. Hill, 472 U.S. 445, 454 (1985), citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). The Department’s regulations regarding procedural safeguards for disciplinary hearings[8] comport with the requirements of the Fourteenth Amendment as set forth in Wolff Torres v. Commissioner of Correction, 427 Mass. 611, 618 (1998).[9] Therefore, where the Department has properly followed its regulations, the inmate has received adequate due process.
The Department followed its regulations in this case. It served the plaintiff with a notice of the disciplinary hearing on September 9, 1997, 38 days before the hearing was held. The notice included a copy of the disciplinary report and notification that the plaintiff could request witnesses and evidence, and be represented by counsel. All of the Department’s denials of witnesses and evidence were within its discretion. The plaintiff was given a copy of the hearing report, including the SHO’s rulings on the plaintiffs objections, a description of the evidence relied on, and a statement of the reason for the sanctions imposed. The record demonstrates that the Department complied fully with the disciplinary procedure regulations in this case. Therefore, the plaintiff was afforded due process in this disciplinary proceeding.
CONCLUSION AND ORDER
It is hereby ORDERED that judgment enter DENYING the plaintiffs petition for certiorari review, and dismissing all other claims in the plaintiffs complaint.

The charges included the following offenses under 103 Code Mass. Regs. §430.24: “(1) disobeying an order of, lying to, or insolence toward a staff member; (2) violating any departmental rule or regulation; (8) conduct which disrupts or interferes with the security or orderly running of the institution; (15) possession, manufacture, or introduction of a gun, firearm, explosive, ammunition, weapon, sharpened instrument, knife, or tool; (16) killing; (18) fighting with, assaulting, or threatening another person with any offense against his person or property; (19) use of obscene, abusive, or threatening language, action, or gesture to any inmate, staff member, or visitors; (32) violating any law of the Commonwealth of Massachusetts or the United States; (33) attempting to commit any of the above offenses . . .”

Those offenses are: two counts of mayhem; one count of armed assault with intent to murder; two counts of assault and battery with a deadly weapon; and two counts of assault and battery on a correction officer.

“. . . if the inmate wishes to have the reporting staff person or other witnesses present ... he shall complete the request for representation and witness form and submit it to a staff person within 24 hours of receiving it . . . The failure to submit a request for representation and witness form may, in the discretion of the hearing officer, constitute a waiver of the inmate’s rights to call witnesses ... at the hearing.”

At the hearing on the present motion on October 29, 1998, the plaintiff asserted that his Request For Representation And/or Witnesses form had contained an additional page that the Department did not include in the copy of the administrative record filed with this Court. He asserted the allegedly missing page requested additional witnesses. Although the Court gave him leave to do so, the plaintiff has been unable to supply a copy of the missing page or any evidence of its existence. Accordingly, the Court’s review is limited to the administrative record as submitted. See Bielawski v. Personnel Adm’r of Div. of Personnel Admin., 422 Mass. 459, 464 (1996).

“The inmate shall be allowed to call and question witnesses in his defense, or to present other evidence, when permitting him to do so will not be unduly hazardous to personal safety, institutional safety or correctional goals. The factors that the hearing officer may consider when ruling on an inmate’s request to call witnesses, questioning of witnesses, or offer of other documentary or physical evidence shall include, but shall not be limited to, the following: (a) Relevance; (b) Whether the evidence is cumulative or repetitive; (c) Hazards presented by an individual case; (d) Unavailability of the reporting staff person or other staff person for a prolonged period of time due to illness, vacation or other authorized absence, or for other good cause; (e) Failure of the inmate to provide a summary of the expected testimony of a proposed witness.”

103 Code Mass. Regs. §430.00 el seq.

In Torres, the supreme Judicial Court also ruled that these procedures adequately protected an inmate’s due process rights as guaranteed by art. 12 of the Declaration of Rights of the Massachusetts Constitution. Id. at 619 n. 11.